## STATE v. WILCOX.

### (Filed September 30, 1902.)

HOMICIDE—*Trial—Disturbance of Court—Law of the Land—New Trial.*

> Where, on the trial of a person for murder, during the closing argument for the prisoner, about one hundred persons leave the court-room and a fire alarm is given, the trial judge, finding as a fact that these demonstrations were made for the purpose of breaking the force of the argument of counsel, a new trial will be granted.

INDICTMENT against James Wilcox, heard by Judge *George A. Jones* and a jury, at March Term, 1902, of the Superior Court of PASQUOTANK County. From a verdict of guilty of murder in the first degree, and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *G. W. Ward,* for the State.

*E. F. Aydlett* and *W. M. Bond,* for the defendant.

MONTGOMERY, J. "No person ought to be taken or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property but by the law of the land." And that provision of

our State Constitution appplies as well to the procedure and manner of trial in our Courts of justice as it does to the great principles of law which underlie our society. Under the law of the land, all persons charged with crime are as much entitled to a fair and unprejudiced trial as they are to the protection of their persons, their property or their reputation. They have the right under the same Constitution to have counsel for their defence, and any wilful interruption of such counsel while conducting such defence, intended to disconcert and embarrass, is not only unlawful as obstructing and preventing a fair trial, but is deserving of the condemnation of all good citizens.

In this case, the prisoner was arraigned on an indictment for murder and was convicted of that crime in the first degree. The evidence was entirely circumstantial; and while that character of evidence may, in its very nature, produce a high degree of moral certainty in its application, yet it is never to be forgotten that it requires the greatest degree of caution and vigilance in its application.

In reading the record in this case, it hardly seems possible that the jury could have given that cautious and vigilant attention to the evidence which the law required of them, or to the presentation of the prisoner's case to them by his counsel that thought, which the importance of the case demanded. In their immediate presence, one hundred people in their deliberate purpose to prejudice the rights of the prisoner, committed a great wrong against the Commonwealth and a contempt of the Court. On the outside of the court-house, greater improprieties took place, for the purpose of prejudicing the prisoner with the jury. No such demonstrations were ever witnessed in our State before, and for the honor of the Commonwealth, such ought never to be repeated.

In the statement of the case by his Honor, he said: "After

the evidence was all in, and while one of the counsel was making the closing argument for the prisoner, about one hundred people, being about a fourth of those present in the court-room, as if by concert, left the room.  Soon thereafter, while the same counsel was addressing the jury, a fire alarm was given near the court-house, which caused a number of other persons to leave the court room.  The Court is of opinion, and so finds the fact, that these demonstrations were made for the purpose of breaking the force of the counsel's argument.  But the Court does not find that the jury were influenced thereby.  There is no motion made by the prisoner to set aside the verdict in consequence of said conduct."

Sufficient excuse was made here by the counsel for the prisoner for the failure to make the motion for a new trial in the Court below to justify the Attorney-General in consenting to an agreement to consider the motion as having been entered at the proper time, which he did.  In such a case as this, it was not indispensable that a finding by his Honor that the jury had been influenced by the conduct of the offenders, should have been made.  The disorderly proceedings assumed such proportions as to warrant this Court in declaring that the trial was not conducted acording to the law of the land.  The propriety of our ruling is strengthened by the circumstances that contempt proceedings were not commenced against those offending, and that no motion was made to set the verdict aside and for a new trial after such unheard-of demonstrations.  The counsel for the prisoner, in his argument here, in response to a question, stated that if the verdict had been set aside, the prisoner would have met a violent death on the instant.

The prisoner must not only be tried according to the forms of law, these forms being included in the expression "the law of the land," but his trial must be unattended by such influences and such demonstrations of lawlessness and intimi-

STATE *v.* WILCOX.

dation as were present on the former occasion. The Courts must stand for civilization, for the proper administration of the law in orderly proceedings. There must be a new trial of this case.

New Trial.

CLARK, J, concurring. The Judge, having found as a fact that the demonstrations, within and without the court room, were made "for the purpose of breaking the force of the counsel's argument," the magnitude and nature of those demonstrations were such as to require a new trial. The administration of justice must not only be fair and unbiased, but it must be above any just suspicion of any influence, save that credit which the jury shall give to the evidence before them. It is of vital importance to the public welfare that the decisions of Courts of justice shall command respect, but this will be impossible if there is ground to believe that extraneous influence of any kind whatever has been brought to bear.