## STATE v. JOSHUA HARRISON.

(Filed 17 September, 1907).

**1. Removal of Causes—Counties—Duty of Court—Objections and Exceptions.**

When a cause is ordered removed from one county to another, the law imposes upon the Court the duty of selecting the county to which the cause shall be removed. When the Court states that the counsel for the prosecution could name any county in the district except a certain one, which they do, and the defendant interposes no objection or does not except thereto, he is deemed to have acquiesced. If excepted to in apt time, whether reversible error had been committed, and new trial ordered, *Quære?*

**2. Evidence—Maps.**

A map may be used by a witness to explain his testimony and enable the jury to understand it, though it may not be admitted in evidence; and a witness may show thereby the location of his residence when such is material and relevant.

**3. Indictment—Kidnapping—Evidence—Circumstantial Evidence.**

When the State relies on circumstantial evidence in an indictment against defendant for kidnapping a boy, it is competent to show by a witness that the defendant was a neighbor of the boy's parents, and, knowing thereof, took no part in the general search instituted by the neighbors, in which several hundred persons participated, such being a circumstance, though slight, in the chain of evidence.

**4. Same—Kidnapping—Evidence—Circumstantial Evidence—Exclusion.**

In an indictment for kidnapping a child the State must establish the fact that the child had been actually carried away, as well as that the defendant did it; and, circumstantial evidence being relied on, the force of evidence of this character, though slight in any one circumstance, is materially strengthened by the total absence or vestige of any other agency. Hence, evidence is competent tending to prove that the child could not have been lost in a sound not far from his residence, "for that it is a harbor for boats," and that "there are usually plenty of fishermen and gunners on the sound and fishermen near the wharf"; also, "that the woods for miles around had been scoured in vain by hundreds of searchers," if such evidence, taken in connection with the other evidence of time, place, motive, opportunity and conduct, concur in pointing out the accused as perpetrator of the act.

5. Same—Evidence—Newspaper Articles—Declarations.

After a conversation between witness, the father of the lost child, and the defendant, brought out without objection on direct examination concerning an article published in a newspaper, in which the defendant said the kidnapping idea was absurd, and requested witness to contradict it, and, upon cross-examination, witness was handed a newspaper containing an article headed "Kidnapped," and requested to say if it was the article referred to, to which he replied it was, it was not error to exclude the further question on cross-examination whether the paper did not contradict it the next day. The direct examination was evidence of the declaration of the defendant, and the subject of the newspaper article, introduced by defendant himself, and his statements, are competent evidence against him.

6. Appeal and Error—Attorneys—Improper Remarks—Objections and Exceptions.

The Supreme Court will not correct the errors of the trial Judge, or the conduct of the attorneys during the trial, or their use of improper or offensive language, unless proper exceptions were made upon the trial at the time.

7. Same.

The Supreme Court will not correct the errors of the trial Judge unless duly excepted to, nor the improper or offensive language used by attorneys during argument upon the trial, unless called to the attention of the Court below and he fails to correct it. Objections and exceptions to the conduct of the counsel taken for the first time on appeal are too late.

8. Appeal and Error—Jurors—Outside Influence—Applause of Crowd—Correction.

Sharp retorts and repartee of counsel in the argument of the case, which bring applause from a large part of the crowd in the court room, lasting several minutes, will not be taken as sufficient ground for a new trial, when such is strongly reprimanded by the Judge and there is no finding that there was a preconceived design and intention to prejudice the jury against the defendant, and no sufficient evidence to support any such allegation, if made.

9. Indictment—Kidnapping—Proof.

Under an indictment for kidnapping, it is only necessary to prove the taking and carrying away of a person forcibly or fraudulently.

10. Indictment, Bill of—Sufficiency.

A bill of indictment is not defective which conforms to a statute making the particular act an offense, and sufficiently describes it

by terms having definite and specific meaning, without specifying the means of doing the act. Such is sufficient if it charges the act itself, without its attendant circumstances.

CRIMINAL ACTION, tried at March Term, 1907, of PASQUO-TANK Superior Court, before *W. R. Allen, J.,* and a jury.

The indictment charged the felonious kidnapping, on 13 February, 1905, of one Kenneth Beasley, a boy child eight years of age. The jury rendered a verdict of guilty. From the judgment of the Superior Court the defendant appealed.

*Assistant Attorney-General Clement* and *H. S. Ward* and *W. M. Bond* for the State.

*Aycock & Daniels, Aydlett & Ehringhaus* and *I. M. Mee-kins* for defendant.

BROWN, J.  The indictment was returned in Currituck County, where the offense is charged to have been committed. The Court granted the defendant's motion to remove the case for trial to another county. The counsel for defendant made no objection to any county except Camden. The Court then stated that counsel for the State could name any county in the district except Camden. Pasquotank County was then named by counsel for the State and adopted by the Court. No objection was made by counsel for defendant, and no exception taken at the time. As the defendant took no exception, he acquiesced in the action of the Court, and cannot now be heard to complain. Had the defendant objected at the time, his Honor doubtless would have corrected the error and selected the county himself. The practice of allowing either party to select the county when a cause is removed for trial is not to be commended, and, if excepted to at the time, might possibly be regarded as reversible error, necessitating a new trial. The law imposes upon the Court the duty of selecting the county, and this duty cannot be delegated to others.

There are eight exceptions in the record to the rulings of the Court upon evidence offered, all of which we have ex-

amined with that care which the importance of this case demands. We find no error pointed out by the exceptions of such a character as would justify us in awarding a new trial, and all of the exceptions need not be commented upon in this opinion.

The witness Beasley was permitted to take up a map and show the location of his residence. The Court permitted the witness to use the map to explain his evidence. The defendant's exception thereto cannot be sustained. The map was not admitted in evidence, but it was competent for the purpose of enabling the witness to explain his testimony and enable the jury to understand it. Diagrams, plats and the like are of frequent use for this purpose in the trial of causes, and for such purpose the use of the map was admissible. *Dobson v. Whisenhant,* 101 N. C., 645; *Riddle v. Germantown,* 117 N. C., 387; *State v. Whiteacre,* 98 N. C., 753; *State v. Wilcox,* 132 N. C., 1135.

It was in evidence that defendant was a neighbor of the boy's parents, and defendant excepts because a witness was permitted to state that defendant took no part in the general search instituted by the neighborhood, in which several hundred persons participated. We see no objection to this, and his Honor's ruling is supported by *State v. Wilcox,* 132 N. C., 1128. It is only a very slight circumstance, it is true, but facts which are but slight evidence standing alone should be admitted when the State relies upon circumstantial evidence, if they, with the other facts proved, bear upon the offense charged. *State v. Rhodes,* 111 N. C., 647.

Exceptions 4, 5, 6 and 7 relate to the introduction of evidence tending to prove that the boy could not have been lost in the sound, not far from his residence; that "many people frequent the sound"; that "it is a harbor for boats"; "there are usually plenty of fishermen and gunners on the sound, and fishermen usually fish near the wharf."

The State was endeavoring to prove by circumstances that the boy had been carried away. To that end evidence was offered that the woods for miles around had been scoured in vain by hundreds of searchers. The State then undertook to demonstrate the great improbability that the boy was lost in the near-by water. We see no objection to this proof. Its value was for the jury. It was a circumstance, slight though it may be, tending, with other evidence, to establish the contention that the boy had not been lost in the woods or drowned along the shore of the sound. It was incumbent upon the State to establish the fact that the boy had been actually carried away, as well as to prove that the defendant did it. In this connection the language of *Mr. Justice Connor* in *State v. Wilcox* is very pertinent: "In a criminal case, where all the circumstances of time, place, motive, means, opportunity and conduct concur in pointing out the accused as the perpetrator of an act of violence, the force of such circumstantial evidence is materially strengthened by the total absence of any trace or vestige of any other agent." 132 N. C., 1143.

Upon the examination of S. M. Beasley, a State's witness and the father of Kenneth Beasley, the following conversation with defendant was received in evidence on behalf of the State, without objection: "Harrison asked me if I had seen the article in *The News and Observer,* and what I thought of it. I said, 'I don't know what to think of it.' He said, 'Don't you think it is a batch of lies?' I said, 'I don't know whether it is or not.' Then he asked me if I would not write an article to *The News and Observer* and criticise this article referred to as untrue. I told him I was very particular as to what I said, especially what I wrote for the public, as I wanted to get my boy back if possible. He said, 'It is perfectly absurd to entertain the kidnapping idea.' I said, 'It does not seem to me absurd to entertain any idea, in view of the fact that we have had so diligent a search for two weeks and have failed to find any trace of him whatever.' He said,

'If your son was kidnapped, some of your neighbors did it.' I said, 'I don't know who did it, but I would like to get him back if possible, and I would not write anything to *The News and Observer.*' Then he drove on. I presume he was referring to the article in *The News and Observer* which suspected him as being the party who took the child. Such an article was published some time, I think, during the week before this conversation. I did not go back to Raleigh. I did not publish the article, and do not know who did." Upon cross-examination by defendant's counsel, the witness was handed a newspaper containing an article headed "Kidnapped," and requested to say if it was the article referred to. Witness answered that it was; and defendant's counsel then asked, "Did the paper next day contradict it?" The State objected to the last question, and it was excluded. We see no error in this ruling. The evidence in chief to which this was intended as a response was not only not objected to by defendant, but consisted almost entirely of the declarations of the defendant in a conversation with Beasley. The subject of the newspaper article was introduced during that conversation by the defendant himself, and his statements are competent evidence against him. The State did not offer the declarations of *The News and Observer,* but the declarations of the defendant. These were competent evidence, and it was plainly incompetent to undertake to reply to them by the subsequent declarations of the newspaper. Whatever value the general public may or may not set upon the statements of *The News and Observer,* we know of no law as yet which constitutes them evidence of a fact on the trial of an indictment in a court of justice.

The defendant took several exceptions to the conduct of the argument upon the part of counsel for the State. During the argument the Solicitor asserted that the defendant was a bad man, as shown by the evidence, and said the indictment was found in Currituck County and he was being tried·in

Pasquotank.    The Court, without objection by defendant, stopped him and stated that it was not proper to comment on the removal of the cause, and that the jury could not consider it.    The Solicitor made no further reference to the removal. In view of the very prompt action of the Court in correcting the error of the Solicitor, we see no ground for complaint, so far as the Court is concerned.    The same can be said as to the exception to comments of counsel that defendant failed to testify.    The Court corrected this error of counsel in a very effective and impressive manner.    We undertake to correct the errors of the Judge, and not those committed by attorneys. Their errors are to be corrected by the trial Judge, and when he fails in his duty it becomes a ground of exception.    The other exceptions to the conduct of the argument must likewise be overruled, for the reason that counsel for defendant failed to call the Court's attention to the alleged objectionable language, and failed to note an exception thereto.    It is too late after the trial is over to note such objections and exceptions for the first time in the case on appeal.    It is but fair to the Judge, and in the interest of the proper administration of justice, that he should have the opportunity to admonish counsel if they depart in the argument from the proper measure of an advocate's duty.    *State v. Suggs,* 89 N. C., 527 ; *State v. Brown,* 100 N. C., 519 ; *State v. Tyson,* 133 N. C., 695.

The defendant excepts because, during the argument of the Solicitor, the defendant's counsel interrupted him to correct a statement.    The Solicitor made a sharp retort, whereupon a large part of the crowd in the court room broke into applause, which lasted several minutes.    We find that the Court reproved the audience in strong terms for the misconduct, required the Solicitor to suspend his speech until it could be investigated, and called the officers before the Court and inquired of them as to who engaged in the applause.    One man was arrested and sentenced to five days in jail.    We do not think this demonstration warrants us in granting a new

trial.   It is far from being such a public manifestation of
hostility to the defendant as occurred upon the trial of Wil-
cox (131 N. C., 707).   In that case a new trial was ordered,
because it appeared that about one hundred people left the
court room in a body and rang a fire-bell, with the fixed in-
tention to destroy the force of the remarks of the defendant's
counsel and distract the attention of the jury; but that case
differed from the one at bar, inasmuch as the Judge there
found as a fact that the demonstrations were made for the
purpose of breaking the force of counsel's argument and to
prejudice the defendant's case.   In this case there is no find-
ing that there was a preconceived design and intention to
prejudice the jury against defendant, and no sufficient evi-
dence to support any such allegation.   The applause seems
to have been evoked by the tilt between counsel.   It is some-
times the case that in hotly contested cases the sharp repartee
and cross firing of counsel bring laughter or applause from
the audience, which is, of course, promptly checked by the
Judge.   It is not always evidence of deep-seated hostility to
either one party or the other.   It has been held in other
States that, where a disturbance is made in a court room for
the purpose of prejudicing the jury, and where the presiding
Judge pays no attention to the interruption, a new trial will
generally be granted.   *Cartwright v. State,* 16 Texas App.,
473; *Raines v. State,* 81 Miss., 489.   The new trial was
granted in those cases, not solely because of the disturbance,
but because the trial Judge failed to do his duty in correcting
its effect.   In this case, however, the Court rebuked the audi-
ence in strong terms for their misconduct, and imprisoned
one man, and, in addition thereto, in his charge to the jury,
used these words: "You would be unworthy to sit in the jury
box if you permitted the applause of the crowd or any senti-
ment of the audience to sway you the breadth of a hair from
the path of duty."   We have no doubt that these impressive
words from an upright and fearless Judge, preceded as they

were by summary punishment upon an offender, had far more
influence upon the minds of the jury than the impulsive con-
duct of some of the audience.

The defendant handed up a number of prayers for instruc-
tion, many of which were practically given by the Court, and
those which were refused the defendant was not entitled to.
The defendant requested the Court to instruct the jury that
there is no sufficient evidence to justify a conviction.    The
State relies upon a chain of circumstances proven by different
witnesses, no one of which, standing alone, would be sufficient
to convict, but when taken together, the State contends, they
point strongly to the defendant's guilt.    It must be admitted
that the circumstances in evidence point to the guilt of the
defendant, and that there is not a circumstance which points
to any other person.    To set them out would be of no value
as a precedent, and would unduly lengthen this opinion.    It
is not for us to say that the defendant should or should not
have been convicted upon this evidence, as the jurors are the
triers of the fact, and not the Court.    They have rendered
their verdict of guilty, and, measured by the standard pre-
scribed by law, his Honor committed no error in not with-
drawing the case from their consideration.    This evidence is
not so slight and inconclusive as that in no reasonable view
of it ought the jury to convict.    *State v. Atkinson,* 93 N. C.,
519.    The evidence, as a whole, raises much more than a
mere conjecture or suspicion, and the case comes within the
general rule that, if there be any evidence tending to prove the
guilt of the accused, the weight of it must be left to the jury.
*State v. Vinson,* 63 N. C., 335; *State v. Rhodes,* 111 N. C.,
650; *State v. Wilcox, supra.*    Defendant excepts to the re-
fusal of the Court to give the following instruction: "The
word 'kidnap' has a technical meaning.    It is derived from
the common law and must be interpreted according to its
technical meaning at common law, and its meaning at the
common law and under our statute is, to take and carry away

any person, forcibly or fraudulently, beyond the boundaries of the State." The Court instructed the jury that, "By kidnapping is meant the taking and carrying away of a person, forcibly or fraudulently." The characteristics and limits of this offense are somewhat differently drawn by legal writers. Blackstone and some other English authorities define kidnapping to be the "forcible abduction or stealing away of a man, woman or child from their own country and sending them into another." In East Pleas of the Crown, Vol. I, p. 429, it is described as "the most aggravated species of false imprisonment," and defined to be "the stealing and carrying away or secreting of any person." "The Supreme Court of New Hampshire," says Bishop, "more reasonably, and apparently not in conflict with actual decisions, held that transportation to a foreign country is not a necessary part of this offense." Bish. New Crim. Law, Vol. II, sec. 750. The case referred to is *State v. Rollins,* 8 N. H., 550, and sustains the author's text. Bishop states the better definition of kidnapping to be "false imprisonment aggravated by conveying the imprisoned person to some other place." *Ibid.* See, also, *Eberling v. State,* 136 Ind., 117; *State v. Leuth,* 128 Iowa, 189; *Haddon v. People,* 25 N. Y., 373; 5 Words and Phrases, p. 3928, and cases cited. We think that the exception cannot be sustained.

It is further objected that the bill is defective, in that it fails to set out "facts and circumstances stating the offense." The bill need not set out the circumstances attending the commission of the offense. It is sufficient if its allegations pursue the language of the statute creating the offense and prescribing its essential elements. *State v. George,* 93 N. C., 567. In *State v. Stanton,* 23 N. C., 424, *Chief Justice Ruffin* says: "When a statute makes a particular act an offense, and sufficiently describes it by terms having a definite and specific meaning, without specifying the means of doing the act, it is

145—27

sufficient to charge the act itself without its attendant circumstances." A careful review of the whole record convinces us that no reversible error has been committed.

No Error.