STATE v. HOUSTON M. EVANS.

(Filed 5 April, 1922.)

**1. Intoxicating Liquor — Spirituous Liquor — Manufacture—Evidence— Character—Alibi.**

Evidence tending to show that upon raiding a whiskey still the officers of the law saw at a distance a small white man and a negro operating it, who fled at their approach, the white man about the size of the defendant, leaving his coat, in which was found a picture of a woman acknowledged

by the defendant to be his wife, with certain letters from her and a Virginia lawyer in regard to an indictment: *Held*, competent for the solicitor to question the defendant on the stand as to his having abandoned his wife, and as to the indictment in Virginia, as tending to impeach his character and shake his denial of being at the still, and as to his attempt to prove an *alibi*.

**2. Trials—Evidence—Colloquies Between Counsel and Witness—Presumptions—Action of Judge—Appeal and Error—Harmless Error.**

Colloquies between attorneys and witnesses aside from the purpose of the evidence should be avoided, both in criminal and civil trials, but assuming that the jury will determine the controversy upon the evidence, such will not be held for reversible error, when the trial judge takes prompt and sufficient action in eradicating their effect.

**3. Appeal and Error—Prejudice—Remarks of Counsel—New Trials.**

Where upon the trial for the unlawful manufacture of liquor the court has told the solicitor it was improper for him to argue to the jury matters not in evidence, as that certain offenders carried spirituous liquors for a considerable distance into other states for the purpose of sale, the remarks of the solicitor thereafter that the jury all knew this was done, *is held* to be prejudicial to the defendant, entitling him to a new trial under the evidence of this case.

APPEAL by defendant from *Devin, J.*, at November Term, 1921, of GRANVILLE.

The defendant was convicted on an indictment for manufacturing liquor. The testimony for the State was that officers Hutchins, Hobgood, Walters, Bowling, and Newton, on the afternoon of 26 June, 1921, went out on Bearskin Creek, in Granville County, and found a still being operated by a white man and a negro. When the officers got within about 20 steps of them, both ran. The white man dropped a coat which he had in his hand. He was small and slight, and about the same size as the defendant. In the coat which was dropped was found a photograph which the defendant on the stand admitted was a picture of his wife and letters from her to him and a subpoena from a Virginia court to him and a letter from a Virginia lawyer. This coat was dropped by the white man, who wa about the same size as defendant, as he ran away from the still which he was assisting in operating. The defendant attempted to explain the presence of his coat at this still by testifying that on 23 June he and a man named Chandler rode over from South Boston, Va., to Oxford, and while on the way the coat dropped off the door of the car on which it was lying. The defendant was corroborated on this point by testimony of two men, Chandler and Green, who also testified in corroboration of defendant's *alibi* that they were fishing together at Barnett's pond in Person County on that date, 26 June.

The State, in reply, introduced a justice of the peace, a county policeman, and a deputy sheriff, all from South Boston, who testified that the

character of the defendant and Chandler and Chrismus was bad. It was admitted by the defendant that he had been convicted in Virginia for having liquor, but he claimed that he had appealed. Verdict of guilty, judgment, and appeal.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*D. G. Brummitt for defendant.*

CLARK, C. J. The motion for nonsuit was properly denied. The defendant made exceptions to the question by the solicitor as to whose picture it was which was found in the pocket of the coat which he admitted was his, and he was asked, to impeach the witness, questions as to whom the letter was from, and whether he had not deserted his wife, and similar questions. The witness admitted that the picture was that of his wife, denied that he had deserted her, and said that they had been divorced. These and other questions along that line were competent to impeach the character of the defendant, and to shake his evidence in denial of being at the still, and as to the attempt to prove an *alibi*.

At one point in the cross-examination, when the solicitor asked the defendant if his wife was not taking care of his children, and he denied it, the solicitor said, "It is so." Counsel for the defendant, in arguing the case before the court, stated that this was said very loudly, while the Assistant Attorney-General represented it as having been said in a low tone as a "side" remark. The record does not show which was right as to this.

The jury are presumed to be men of intelligence, and can hardly ever be influenced by such by-play. Certainly there was no error committed by the court, for he instructed the jury not to consider it, and the solicitor both withdrew the remark and apologized. *S. v. Saleeby, ante,* 740. It was a collateral matter in a cross-examination to impeach the defendant, who had put his character in evidence by going upon the stand, and the jury must have fully understood that they were to acquit or convict the defendant upon the evidence as to the commission or innocence of the offense with which he was charged.

Such colloquies between counsel and witnesses, on cross-examination, whether in civil or criminal actions, are not orderly, and should always be avoided. It could hardly have had any effect, as the solicitor, in a few minutes, was arguing to the jury that the statement of witness "was not so." Besides, the judge interposed, and the solicitor apologized.

The solicitor further asked the defendant if he received the letter which was found in his pocket "from your lawyer in Virginia." The defendant's counsel objected to any reading or examination of these

letters, and asked if the solicitor thought he had a right to read that letter to the jury or examine the witness about it. It does not appear from the record that the solicitor had offered to read the letter or made any statement or suggestion as to its contents, but on this suggestion from the defendant's counsel the solicitor countered by turning to the jury, and smiling, said that he would like to read it. We do not see that this remark could have had any bearing with the jury in any way. Their verdict necessarily must have turned upon whether the evidence identified the defendant as the man who was found at the still engaged in manufacturing.

The solicitor further asked if the defendant had not been convicted in a liquor case in Virginia. The defendant admitted that he had been, but denied his guilt, and said that the case had been appealed, and testified that he never made any liquor and never sold any. The solicitor in his argument to the jury mentioned a case in Roxboro in which it was shown that a negro from there continually went to South Boston for blockade liquor. Defendant's counsel objected upon the ground that there was no evidence connecting the defendant with the transaction. The court sustained the objection, saying, "The solicitor must confine himself to the evidence." The solicitor further stated in his speech that men who live in one state go 100 miles into another state to get liquor, and that a still had been established on the border land between the two states by a negro from Apex. The defendant's counsel again objected, and the court held that it "was not proper for the solicitor to argue to the jury matters not in evidence, or state particular facts in other cases," and instructed the jury not to consider the same.

But the solicitor, it appears, then said, "Well, gentlemen of the jury, you all know of that affair, and all of us know that men manufacture liquor in one state and carry it 250 miles into another state to sell it." The defendant's counsel objected to this remark. Doubtless it is a matter of common knowledge that illicit liquor is continually carried across state lines for sale, but we cannot say that the conduct of the solicitor in repeating this remark after the court had ruled out such remarks as to matters not in evidence was harmless error. It may have had no influence upon the verdict of the jury, but certainly the solicitor should not have repeated the remark after the court had ruled, and properly, that such statements should not be made by the solicitor. There was no exception to the judge's charge, but for the reason just given we think that the defendant is entitled to a

New trial.