STATE v. MELVIN TUCKER AND TOM TAYLOR.

(Filed 16 December, 1925.)

1. Criminal Law — Appearance of Defendant — Witnesses — Evidence— Appeal and Error—Objections and Exceptions—Courts.

Upon the trial of a criminal action for the violation of our prohibition law, it is reversible error, over the defendant's objection aptly made, for the trial judge to permit without correction, the prosecuting attorney to argue to the jury that the defendant, who had not taken the stand, looked like a professional bootlegger, and his looks were sufficient to convict him of the offense charged.

2. Criminal Law—Presumption of Innocence—Witnesses—Statutes.

The legal presumption in favor of the defendant in a criminal action, goes with him throughout the trial, and under our statute, his failure to take the witness stand in his own behalf shall not prejudice him. C. S., 1799.

3. Courts—Argument to Jury—Grossly Abusive Language.

Where the language of an attorney in his address to the jury is unwarranted and grossly abusive, it is reversible error for the trial judge to fail to correct the attorney using the language, upon objection and exception by the opposing party. The duty of the trial judge in such instances pointed out by STACY, C. J.

APPEAL by defendant, Melvin Tucker, from *Shaw, J.,* at May Term, 1925, of IREDELL.

Criminal prosecution tried upon an indictment charging the appealing defendant and another with violations of the prohibition laws.

The State offered evidence tending to support the charges; the defendants, while offering evidence, did not go upon the stand as witnesses in their own behalf.

The record discloses the following exception: Mr. J. G. Lewis, who assisted the solicitor in the prosecution of the case, made the concluding argument to the jury, and in the course of his remarks, among other things, said: "Gentlemen of the jury, look at the defendants, they look like professed (professional) bootleggers, their looks are enough to convict them." Counsel for defendants immediately objected, but the court held the argument to be proper and overruled the objection.

From an adverse verdict and judgment pronounced thereon, the defendant, Melvin Tucker, appeals.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*Chas. W. Stevens for defendant, Melvin Tucker.*

STACY, C. J. The one serious question presented by the record is whether it is prejudicial error in a case of this kind, for the solicitor

or counsel for the private prosecution in the closing argument to the jury, to comment upon the looks and appearance of the defendants who have not gone upon the witness stand, to the effect, "Gentlemen of the jury, look at the defendants, they look like professed (professional) bootleggers, their looks are enough to convict them," and on objection, to have such comments held by the court to be proper. Similar remarks were said to be prejudicial, and were either held for error or disapproved, in *S. v. Murdock,* 183 N. C., 779; *S. v. Saleeby, ibid.,* 740; *S. v. Davenport,* 156 N. C., p. 610; *S. v. Tyson,* 133 N. C., p. 699; *Jenkins v. Ore Co.,* 65 N. C., 563; *S. v. Williams, ibid.,* 505; *Coble v. Coble,* 79 N. C., 589 (the "upas-tree" case).

Had the defendants gone upon the witness stand, their demeanor, while testifying, would have been a proper subject for comment, the same as that of other witnesses, but of this, counsel was not speaking. It was the right of the State to have the defendants present at the trial, both for the purpose of identification and to receive punishment if found guilty. *S. v. Johnson,* 67 N. C., 55. And if a defendant should persist, for example, in wearing a mask while on trial, the court would be fully justified in ordering the mask removed, so that he might be identified by the witnesses. *Warlick v. White,* 76 N. C., 179. But by express statute, a defendant on trial in this jurisdiction, charged with a criminal offense, is, at his own request, but not otherwise, competent to testify in his own behalf, "and his failure to make such request shall not create any presumption against him." C. S., 1799.

In the decisions dealing directly with this statute, it has been held that counsel for the prosecution is precluded from referring in his argument to any failure on the part of a defendant to testify, or to become a witness in his own behalf. *S. v. Harrison,* 145 N. C., 414. The presumption of innocence which surrounds a defendant upon his plea of "not guilty," and which goes with him throughout the trial, is not overcome by his failure to testify in the case. He is not required to show his innocence, but the burden is on the State to establish his guilt beyond a reasonable doubt. *S. v. Singleton,* 183 N. C., 738. And while his absence from the witness stand or his failure to testify, may be a circumstance not without its moral effect upon the jury, of which every lawyer representing a defendant is always conscious (*S. v. Bynum,* 175 N. C., p. 783), yet this fact, as a matter of law, creates no presumption against him, and it is not a proper subject for comment by counsel in arguing the case before the jury. *S. v. Humphrey,* 186 N. C., 532; *S. v. Traylor,* 121 N. C., 674.

In passing, we observe, however, that this statute does not restrict the prosecuting attorney from making such comments upon the evidence and drawing such deductions therefrom as would have been legitimate

before the passage of the act, for, while enlarging the rights of the defendants, the statute did not abridge the privileges of the prosecution. *S. v. Weddington,* 103 N. C., 364. We would not be understood as saying anything which might have a tendency, even in the slightest degree, to suppress the highest enthusiasm of forensic effort on behalf of the State in a criminal prosecution, or in any case at the bar, but counsel should always remember that the ends of justice are best subserved by fair, open and legitimate debate. To arrive at the exact truth, according to the facts and the law of a case, is the aim of every legal contest, and to this end the utmost power of logical reasoning may be employed. Indeed, to master the facts and to marshal them in such a way as to lay bare the truth of a matter are marks of the accomplished advocate.

We can readily understand how the observations of counsel, here complained of, were made by the private prosecutor in the heat of debate, and disregarded by the learned judge while busily engaged in the trial of the cause, but, sitting here in calm review, we are unable to overlook the remarks in the face of an exception taken at the time, or to give them the sanction of our approval. Such denunciatory comments when seriously made, are universally disapproved. Not only do we find a uniform disapproval of such remarks in our own reports, but to like effect are the expressions in other jurisdictions: *S. v. Davis,* 190 S. W. (Mo.), 297; *January v. State,* 181 Pac. (Okla.), 514; *Thurman v. State,* 211 S. W. (Tex.), 785; *Atkinson v. State,* 273 S. W. (Tex.), 595, and many others too numerous to be cited.

In *Bessette v. State,* 101 Ind., 85, it was held for prejudicial error to permit the prosecuting attorney, over objection, to comment on the personal appearance of the defendant, not as a witness, nor on account of his manner and bearing as such, but as indicating a probability of guilt—the language used being as follows: "Luke Bessette has a bad looking face; I ask you to just look at his face; you have a right to look at his face, and I have the right to ask you to look at his face, and as prosecuting attorney I have a right to comment upon it; if his face does not show him to be a bad man, then I am not a good judge of the human countenance."

Speaking to the objection made by defendant's counsel to these remarks, and of which no notice was taken by the presiding judge, the appellate court said: "The remarks indulged in by the prosecuting attorney, having reference to the personal appearance of the accused, not as a witness, nor on account of his manner and bearing as such, but relating to his personal appearance as an accused person before the bar of the court, cannot be justified. . . . It is the duty of the *nisi prius* court to control and direct the argument of counsel in the

interest of justice, and when the prosecutor unconsciously, or, perhaps, from want of experience, went so far outside of the circle of fair debate as to attempt to degrade and humiliate the defendant, by arraigning him for his personal appearance and characteristics while he was by the compulsion of the court at its bar, it was the duty of the court to interfere for his protection."

Commenting on the sharp language used by counsel in *McLamb v. R. R.*, 122 N. C., 862, it was said by this Court: "Much allowance must be made for the zeal of counsel in a hotly contested case, especially where the colloquy is mutual; and indeed much latitude is necessarily given in the argument of a case where there is conflicting evidence; but counsel should be careful not to abuse their high prerogative, and where the remarks are improper in themselves, or are not warranted by the evidence and are calculated to mislead or prejudice the jury, it is the duty of the court to interfere." The same expression was made in *Perry v. R. R.*, 128 N. C., 471, where a new trial was awarded for improper remarks of counsel.

The rule applicable is forcibly stated by *Bynum, J.*, in *Coble v. Coble*, 79 N. C., 590, as follows: "Some allowance should be made for the zeal of counsel and the heat of debate, but here, the language and meaning of counsel were to humiliate and degrade the defendant in the eyes of the jury and bystanders—a defendant who had not been impeached by witnesses, by his answer to the complaint, or by his conduct of the defense, as it appears of record. Such an assault is no part of the privilege of counsel and was well calculated to influence the verdict of the jury. The defendant's counsel interposed his objection in apt time and upon the instant, but they met with no response from the court, and for this error there must be a *venire de novo.*"

Speaking to the subject in *S. v. Tyson,* 133 N. C., p. 698, *Walker, J.,* said: "We conclude, therefore, that the conduct of a trial in the court below, including the argument of counsel, must be left largely to the control and direction of the presiding judge, who, to be sure, should be careful to see that nothing is said or done which would be calculated unduly to prejudice any party in the prosecution or defense of his case, and when counsel grossly abuse their privilege at any time in the course of the trial the presiding judge should interfere at once, when objection is made at the time, and correct the abuse. If no objection is made, while it is still proper for the judge to interfere in order to preserve the due and orderly administration of justice and to prevent prejudice and to secure a fair and impartial trial of the facts, it is not his duty to do so in the sense that his failure to act at the time or to caution the jury in his charge will entitle the party who alleges that he has been injured to a new trial. Before that result can follow the judge's inaction, objection must be entered at least before verdict."

In explanation of the language just quoted, it was said in *S. v. Davenport,* 156 N. C., p. 612: "In the passage taken from *S. v. Tyson,* we did not intend to decide that a failure of the judge to act immediately would be ground for a reversal, unless the abuse of privilege is so great as to call for immediate action, but merely that it must be left to the sound discretion of the court as to when is the proper time to interfere; but he must correct the abuse at some time, if requested to do so; and it is better that he do so even without a request, for he is not a mere moderator, the chairman of a meeting, but the judge appointed by the law to so control the trial and direct the course of justice that no harm can come to either party, save in the judgment of the law, founded upon the facts, and not in the least upon passion or prejudice. Counsel should be properly curbed, if necessary, to accomplish this result, the end and purpose of all law being to do justice. Every defendant 'should be made to feel that the prosecuting officer is not his enemy,' but that he is being treated fairly and justly. *S. v. Smith,* 125 N. C., 618."

In *Jenkins v. Ore Co.,* 65 N. C., 563, the law of this jurisdiction is stated as follows: "Zealous advocates are apt to run into improprieties, and it must generally be left to the discretion of the judge whether it best comports with 'decency and order' to correct the error at the time, by stopping or reproving the counsel, or wait until he can set the matter right in his charge. It must often happen that the judge cannot anticipate that the counsel is going to say anything improper; and it may be said before the judge can prevent it, as in this case. . . . And then the question was whether he was obliged to stop the counsel then and there, and reprove him, and tell the jury that they must not consider that, or whether he would wait and correct that and all other errors when he came to charge the jury. Ordinarily this must be left to the discretion of the judge. But still it may be laid down as law, and not merely discretionary, that where the counsel *grossly* abuses his privilege to the manifest prejudice of the opposite party, it is the *duty* of the judge to stop him then and there. And if he fails to do so, and the impropriety is gross, it is good ground for a new trial."

In *S. v. Underwood,* 77 N. C., 502, the solicitor commented on the personal appearance of the defendant, in reply to remarks of defendant's counsel calling attention to his appearance, but no objection was interposed promptly, and the matter was not called to the attention of the court at the time. For this reason and because it seemed to be only a case of "cross-firing with small shot," the matter was dismissed on the principle of *de minimis non curat lex.*

In *S. v. Hardy,* 189 N. C., p. 803, and *S. v. Lee,* 166 N. C., 250, it was said by this Court to be error for the presiding judge to instruct

the jury not to regard certain legitimate arguments of counsel. And if it be error to deny counsel the right to argue the whole case to the jury, "as well of law as of fact" (C. S., 203), and it is, then, by analogy, we think it must be held erroneous for the judge to approve the argument of counsel which violates defendants' legal rights. Here counsel stated to the jury that the defendants "look like professed (professional) bootleggers, their looks are enough to convict them," and this was held to be within the domain of legitimate observation under the circumstances of the present case. We find no evidence on the record as to how the defendants looked, and they were not before the court as witnesses. The jurors might well have understood from this statement of counsel, held to be proper by the judge, that they would be justified in convicting the defendants on their looks as defendants present in the court room, and who had not gone upon the witness stand. We must disapprove the holding as a sound legal proposition.

The cases cited by the State are not at variance with this position. *S. v. Woodruff*, 67 N. C., 89, was a bastardy case involving the paternity of a child. The child was in its mother's arms, during her examination as a witness, and its features were called to the attention of the jury. The solicitor, without objection at the time, commented upon the child's resemblance to the defendant, and the judge told the jury that they might consider this in arriving at their verdict. The practice was approved because the resemblance of the child to the defendant, its putative father, was a matter which the jury could determine from observation as well as witnesses. To like effect are the decisions in *Warlick v. White*, 76 N. C., 179; *S. v. Britt,* 78 N. C., 439; *S. v. Horton,* 100 N. C., 443; *S. v. Warren,* 124 N. C., 807.

Speaking to the subject in *Warlick v. White, supra, Rodman, J.,* said: "On general principles it would seem that when the question is whether a certain object is black or white, the best evidence of the color would be the exhibition of the object to the jury. The eyes of the members of the jury must be presumed to be as good as those of medical men. Why should a jury be confined to hearing what other men think they have seen and not be allowed to see for themselves?"

In these cases, however, it will be observed that there was before the jury some natural evidence or standard of comparison by which they could determine for themselves as to the truth of the observations. But we know of no standard, or earmarks, by which defendants may safely be convicted of violating the prohibition laws on their looks. It was conceded on the argument that "all bootleggers do not look alike."

The error in the case at bar consists in the fact that the court did not forbid the improper argument of counsel and caution the jury against its harmful influence, as suggested in many of the cases, but

he expressly permitted it to stand after objection and held it to be proper. To uphold this ruling would mean, not only to sanction the vituperative language used in the present case, but also to open the door for advocates generally to engage in vilification and abuse—a practice which may be all too frequent, but which the law rightfully holds in reproach. If verdicts cannot be carried without appealing to prejudice or resorting to unwarranted denunciation, they ought not to be carried at all. We think the course pursued in the instant case was detrimental to the defendants. Almost the identical language here used was strongly disapproved in *S. v. Murdock, supra,* but there the judge corrected any wrong impression by telling the jury that they could not consider "the physical appearance of the defendant in court, nor any personal peculiarities of his, observed by them, but that they were to pass on the case purely upon the evidence of the witnesses." And in *S. v. Evans,* 183 N. C., 758, a new trial was awarded because the solicitor persisted in calling attention to matters not in evidence after the judge had ruled that such comments were improper.

The penalty for engaging in such remarks, when not properly and fully corrected by the court and all prejudice removed, is a new trial, as was the course pursued for similar impropriety in *Starr v. Oil Co.,* 165 N. C., 587, where it was said: "Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury on equal terms with his adversary, and not be hampered in the prosecution or defense of his cause, by extraneous considerations, which militate against a fair hearing."

In *Hopkins v. Hopkins,* 132 N. C., 25, a new trial was granted because counsel overstepped the limits of propriety, and was permitted to do so by the court over appellant's objection. See, also, *Moseley v. Johnson,* 144 N. C., 257, and *Overcash v. Kitchie,* 89 N. C., 384.

Where counsel oversteps the bounds of legitimate argument, or abuses the privilege of fair debate, and objection is interposed at the time, it must be left, as a general rule, to the sound discretion of the presiding judge as to when he will interfere and correct the abuse, but he must correct it at some time during the trial, and if the impropriety be *gross* it is the duty of the judge to interfere at once. *Jenkins v. Ore Co., supra.*

It is finally contended on behalf of the State that this exception should not be held for error, because unless the observations of counsel were well founded, of which the jury alone could determine, in all probability they were more hurtful to the State than to the defendants. The suggestion carries with it a fine tribute to the good judgment and common sense of the average jury. And we may pause to say that no better system has been devised for the settlement of disputes than a trial by jury.

This right is vouchsafed and preserved to us in the fundamental law of the land. Now and then glaring errors may occur; but, generally speaking, it is seldom that twelve unbiased minds, guided by correct legal instructions, will agree upon an unrighteous conclusion. But the argument of the State proves too much. It is like a "vaulting ambition which o'erleaps itself and falls on t'other side." The law must speak before the jury. And can it afford to be less sensitive to the rights of litigants than the sentiment to which this appeal is addressed? We think not. If the natural impulse of just men is disposed to condemn unfair debate, the law will not place itself in conflict with that impulse. Indeed, in its deeper and richer meaning, the law is but the constant unfolding of a juster and truer conception of righteousness.

Frequently, in the exercise of the authority conferred upon this Court, we disregard technical errors, when it is apparent that they do not go to the merits of the case, but here we think the error complained of is too serious to be put aside as merely technical. We certainly would not hold that the defendants could be convicted simply upon their looks, but to approve as proper the argument that "their looks are enough to convict them," would necessarily involve, in its last analysis, such a holding. The appealing defendant is entitled to a new trial, and it is so ordered.

New trial.