STATE v. ROBERT P. BOVENDER, ALIAS BUD, ALIAS CATFISH, NORMAN WALTER HALE, IRVIN JENNINGS KING AND RILEY WILLIAM KING.

(Filed 7 June, 1951.)

**1. Criminal Law § 52a (2)—**

The testimony of an accomplice is sufficient to support a conviction, *a fortiari* where the testimony of the accomplice is corroborated by other evidence.

**2. Criminal Law § 81c (3)—**

Exclusion of testimony cannot be held prejudicial when the testimony is thereafter admitted.

**3. Same—**

Exclusion of testimony cannot be held prejudicial when the record does not disclose what the witness would have testified.

**4. Criminal Law § 79—**

Exceptions which are not discussed in the brief are deemed abandoned.

**5. Criminal Law § 51—**

The act of the court in stopping defendants' counsel from exhibiting to the jury a dollar bill which had just been offered in evidence by the solicitor will not be held for error, the matter being in the discretion of the trial court in the orderly conduct of the trial.

**6. Criminal Law § 34g—**

Testimony that a conspirator had shown the officers the places where the stolen safe had been thrown off and later hidden, and as to what was found at such places, is not objectionable as relating to acts or declarations of the conspirator after the accomplishment of the purposes of the conspiracy, but is testimony of the witnesses as to facts within their personal knowledge.

**7. Criminal Law § 42d—**

Testimony as to the finding of incriminating circumstances at places designated by one conspirator is competent against co-conspirators for the purpose of corroborating the testimony of such conspirator at the trial.

**8. Criminal Law § 81c (3)—**

Refusal to permit a witness to testify as to a certain matter cannot be held prejudicial when the record shows that when the question was repeated the witness replied he did not remember.

**9. Criminal Law § 50d—**

A remark of the court will not be held prejudicial when it could in no way have adversely affected defendant.

**10. Criminal Law § 36—**

Exception to the refusal to allow the introduction in evidence of a certified copy of the weather report for the date in question cannot be sustained

when it appears that the witness testified from his personal knowledge as to all matters contained in the report, and further that the record fails to show that such certified copy was in fact offered in evidence.  G.S. 8-35.

**11. Criminal Law § 50f—**

While counsel has the right to argue to the jury what he concedes to be the law of the case, G.S. 84-14, the court properly may warn counsel not to comment upon the failure of a defendant to testify, G.S. 8-54, even though as of that time counsel had made no improper comment, in order to prevent further comment which might violate the rule, and upon objection by counsel, to exclude categorically such comment, taking care that nothing be said or done which would unduly prejudice defendant.

**12. Criminal Law § 81b—**

Mere technical error will not entitle defendant to a new trial but it is necessary that error be material and prejudicial and amount to a denial of some substantial right in order to constitute reversible error.

**13. Conspiracy § 7—**

The court's instructions as to the definition and elements constituting criminal conspiracy *held* without error in this case.

**14. Criminal Law § 81c (4)—**

Where concurrent sentence is imposed on each count, error relating solely to one count is not prejudicial.

**15. Criminal Law § 53b—**

The court's charge on defendants' defense of alibi *held* without error.

APPEAL by defendants, Norman Walter Hale, Irvin Jennings King and Riley William King, from *Nettles, J.*, February Term, 1951, of FORSYTH. No error.

The defendants were charged in the bill of indictment with (1) conspiracy to break and enter the storehouse of Colonial Stores, Inc., in Winston-Salem with intent to steal therefrom, (2) with feloniously breaking and entering the storehouse of Colonial Stores, Inc., with intent to steal, and (3) with feloniously taking, stealing and carrying away an iron safe and contents of the value of $10,000, the property of Colonial Stores, Inc.

The defendant Bovender pleaded guilty and testified for the State. His evidence tended to show that he and his three co-defendants entered into a conspiracy to break, enter and to rob the store of the Colonial Stores, Inc., and that pursuant to this unlawful compact on the night of 24 December, 1950, about 10 p.m. they broke and entered this storehouse by cutting iron bars in the rear and breaking the locks on the back doors, and took and carried away a small iron safe set in concrete.  After its removal from the store this safe was loaded on a truck of Salem Spring Company procured by defendant Hale, an employee of that Company,

and who had keys to its premises. Hale drove the truck away and the other three defendants followed in Riley King's automobile. They drove out of the city to a "little dirt road" near Wallburg and there dumped the safe out and returned to the city. The Salem Spring Company's truck was returned. The defendant Irvin King was taken to a point near his home and put out, as they thought he "would be sure to be picked up on the job." The other three then procured tools, including hammers, chisels and acetylene torch, and returned to where the safe had been left. Bovender now drove his own automobile and Riley King had secured a truck of Winston Laundry Company, a truck which he used as employee of the Laundry Company to pick up laundry, he having keys to the truck and to the premises of the Laundry Company. Attempt was made to open the safe, the cement and hinges were knocked off and the metal burned, but to no avail. So they rolled the safe up in the back of Bovender's automobile and then transferred it to the Laundry Company's truck and drove some distance to a place where there was a sawdust pile and hid the safe in the sawdust. Near this place the right front fender of the truck came in contact with a tree and some of the paint was scaped off. Pursuant to agreement that the safe was to be opened the following Thursday night, 28 December, Hale and Riley King brought the safe to the Laundry Company's garage in the rear of its premises, where Bovender joined them, and there by use of an electric drill a round hole was cut in the safe and with a wire coat hanger the money was fished out. There was one $100 bill, three $50 bills, bills of lower denominations and a large amount of silver currency. They divided the money into four parts, one for Bovender, one for Hale, and Riley King took two parts, one for himself and one for Irvin King. Bovender testified his share was $1,400. Checks and papers taken from the safe were burned. Then the safe was loaded on the truck, driven out, and from a bridge on Highway #421 dumped into the Yadkin River. The manager of Colonial Stores, Inc., testified the safe contained approximately $7,000 in cash and $3,000 in checks.

Bovender was arrested two weeks later, his automobile examined and scratches and marks in the rear discovered. After denying his guilt for several days Bovender confessed and told the officers the whole story as testified by him at the trial. He showed the officers where the safe was first hidden and also the sawdust pile. The officers found the broken cement and pieces of burnt metal near the dirt road, impression of a body and pieces of burnt metal in the sawdust, scraped paint on the bark of a tree nearby, and particles of burnt and broken metal on the floor of the garage of the Laundry Company. The officers also recovered the safe from the river, and this was produced at the trial and identified as having belonged to the Colonial Stores, Inc.

The particles of burnt metal and paint from the bark of the tree were examined by an expert who from microscopic and spectrographic examinations expressed opinion these were similar to the metal of the safe and the paint on the truck. The truck of the Laundry Company customarily driven by Riley King (known as No. 9) was examined and scratches and marks on metal slats in the floor of the truck were found and these slats were introduced in evidence. Defendant Hale on Friday following the division of the money traded for a new automobile, paying $900 in cash in bills as the difference. The dealer said the money was in various denominations and he thought one of them was a $100 bill.

None of the defendants, save Bovender, went on the stand, but they offered numerous witnesses, some fifty in number, in effort to show that each was either at home or elsewhere than at the places at the times testified by Bovender. Defendant Riley King offered witnesses who testified he was on the night of 24 December engaged in picking up laundry over an extended route in the vicinity of the city, with a helper, from 8 :30 to 1 :30 a.m. Defendants also offered evidence tending to show that on the Thursday night on which Bovender testified the safe was hauled back and forth and thrown in the river the weather was very cold, sleet falling and the roads icy and slick.

During the argument to the jury the following exception to the ruling of the court was noted :

"Mr. Johnson : The law says no man has to take the witness stand.

"Objection.

"The Court : That statement is not proper. Gentlemen of the jury, the defendant has the right to take the witness stand or he may remain off the witness stand, as he may be so advised. The fact that he does not go upon the witness stand and testify in his own behalf cannot be taken to his prejudice. It is not proper, gentlemen, for the attorneys for either side to make comment about it.

"Mr. Johnson : I thought I could comment on the law ?

"The Court : No, sir. You can't make any comment at all. It is improper argument, gentlemen of the jury, for the attorneys on either side to make it, and don't repeat it again."

The jury returned verdict of guilty as to each of the defendants, Hale, Riley King and Irvin King, on all three counts as charged in the bill of indictment. Judgment was rendered imposing on each of these defendants concurrent terms in State Prison on each of the three counts. Prayer for judgment as to Bovender was continued to next term. Defendants Hale, Riley King and Irvin King appealed, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Jno. D. Slawter and Joe W. Johnson for defendants, appellants.*

DEVIN, J.   The evidence of defendant Bovender, an accomplice, who pleaded guilty and testified for the State, was sufficient to carry the case to the jury on all counts (*S. v. Hale,* 231 N.C. 412, 57 S.E. 2d 322; *S. v. Ashburn,* 187 N.C. 717, 122 S.E. 832), and there was other evidence tending to corroborate this witness and to support the verdict.

The zeal of counsel for the convicted defendants is manifest by the number of assignments of error they have brought to our attention in the effort to secure a new trial for their clients.   Errors assigned are fifty-six in number, but an examination shows some of them are based on exceptions to the exclusion of testimony which was afterward admitted; others relate to excluded questions to which the record does not disclose the answer or what response would have been made; while other exceptions not referred to in their brief are deemed abandoned.   None of these require specific elaboration.   However, some of the exceptions noted at the trial which are discussed in appellants' brief require consideration.

During the taking of the State's evidence a dollar bill which a witness testified he had "fished" out of the safe after its recovery, was offered in evidence by the solicitor.   When counsel for defendants sought at the time to exhibit this to the jury the court stopped him, reminding him he was not offering evidence and it was not for him to exhibit it at that time. This was a matter in the discretion of the court in the orderly conduct of the trial.

Defendants noted exception to evidence that witness Bovender had shown the officers the places where the stolen safe had been thrown off and later hidden in sawdust.   This exception was on the view that this was after the consummation of the alleged conspiracy and incompetent against the defendants.   But this was testimony as to facts within the witness' personal knowledge and no declaration or act of either of his co-conspirators since the accomplishment of the purposes of the conspiracy was offered.   The principle invoked is inapplicable.   Likewise, it was competent to elicit from this witness in corroboration that he had previously stated to the officers the facts about which he was testifying, and for the officers in corroboration to testify what he had told them.   *S. v. Spencer,* 176 N.C. 709, 97 S.E. 155; Stansbury, sec. 51.

Defendants complain that the court refused to allow them to cross-examine Bovender as to what statement he had made in the City Court on a particular point, but the record shows when the question was repeated the witness replied he did not remember.   Also, exception was noted to the refusal of the court to permit this witness to testify about the amount of his bond and that of his codefendants.   It appeared, however, that the witness did testify that the amount of his bond was $5,000, and that he heard in the City Court the other defendants' bonds announced as $15,000.   It later appeared that the bonds of Hale and Irvin

King were fixed at $12,000, and Riley King gave a $10,000 cash bond. Moreover, the bond of Bovender was introduced in evidence. It would seem defendants obtained whatever benefit there was in the fact that Bovender's bond had been reduced after he testified in the City Court. No harm to the defendants may be predicated on the court's ruling on this score. Nor is there cause for complaint that the court remarked it was immaterial who signed his bond as the bond admitted in evidence shows it was executed by a bonding corporation having no connection with the case.

The defendants asked officer Burke if the solicitor had talked to him about Bovender's bond. Objection was sustained and counsel permitted to put in the record the expected answer, but this was not done, and the record is silent as to what the witness would have said. A similar question, with same ruling, was asked officer Carter, and again the record is silent. We do not think defendants are in a position to complain. *S. v. Ashburn,* 187 N.C. 717 (722), 122 S.E. 833.

Defendants excepted for that Mrs. Riley King was not permitted to testify how long defendants' witness Brown had been living in their home and how long he had known her husband, but later Brown testified without objection he had been living there since December, 1949, and knew Riley King well for that length of time. At the time this evidence was first offered, its materiality was not apparent.

Bovender had testified that on the Thursday night, 28 December, when the safe was brought to the Laundry Company's garage and opened and subsequently thrown in the river the weather was cold, but he did not think there was any sleet and that the ground was dry. He said he did not remember what kind of night it was. To contradict him and to show the condition of the weather defendants called a witness, Wiley Sims, who testified he was meteorologist in charge of the weather records of the United States Weather Bureau at a local airport. Asked what the weather was on Thursday night, 28 December, he replied: "I have a certified copy here." He said he kept the records and they were at his office. The court ruled if he knew of his own knowledge he could testify but if he kept the record the record would be the best evidence, and that he could not testify from a copy. The witness then said he had an independent recollection of the weather on the night of 28 December, and testified that on that night the temperature was below freezing, that there was freezing rain during the early part of the night and up to 1:00 a.m.; that there was a trace of ice on the ground, and the streets were slippery and most transportation stopped. Defendants excepted to the ruling of the court on the ground that the court had refused to allow defendants to introduce a certified copy of the weather report for this date as authorized by G.S. 8-35. But the record does not show that such a certified copy was

offered. The only question presented to the court below seems to have been whether the witness could testify as to weather conditions on that night from a copy of the record or from his independent recollection. A copy of the record of the weather report is included in the record, but it does not affirmatively appear that it was offered as a properly authenticated copy of a public record in accordance with the statute G.S. 8-35, and the questions debated in defendants' brief do not appear to have been raised by the evidence offered. Stansbury, sec. 153; *Kearney v. Thomas,* 225 N.C. 156, 33 S.E. 2d 871. See also *Supply Co. v. Ice Cream Co.,* 232 N.C. 684, 61 S.E. 2d 895. However, all the facts the copy referred to by the witness would have disclosed were testified by him from his personal knowledge, and defendants introduced six other witnesses who testified the weather on this occasion was as described by Sims and as shown on the copy set out in the record. We perceive no resultant harm to the defendants' defense on this point.

Defendants contend they were prejudiced by the action of the court in sustaining objection to the statement made by defendants' counsel, during his argument to the jury, that "the law says no man has to take the witness stand." The statute G.S. 84-14 which places certain limitations on arguments of counsel to the jury concludes with this sentence: "In jury trials the whole case as well of law as of fact may be argued to the jury." The right of counsel to state in his argument to the jury what he conceives the law of the case to be has been upheld in numerous decisions of this Court. *Brown v. Vestal,* 231 N.C. 56, 55 S.E. 2d 797; *Sears, Roebuck & Co. v. Banking Co.,* 191 N.C. 500, 132 S.E. 468; *S. v. Hardy,* 189 N.C. 799, 128 S.E. 152. But applicable also to the question here presented is G.S. 8-54 which guarantees the right of a person charged with a criminal offense to testify in his own behalf, but adds that his failure to testify shall not create any presumption against him. *S. v. Harrison,* 145 N.C. 408 (414), 59 S.E. 867; *S. v. Bynum,* 175 N.C. 777, 95 S.E. 101; *S. v. Humphrey,* 186 N.C. 533 (536), 120 S.E. 85; *S. v. Tucker,* 190 N.C. 708, 130 S.E. 720; *S. v. Jordan,* 216 N.C. 356, 5 S.E. 2d 156; *S. v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733.

The decisions of this Court referring to this statute seem to have interpreted its meaning as denying the right of counsel to comment on the failure of a defendant to testify. The reason for the rule is that extended comment from the court or from counsel for the state or defendant would tend to nullify the declared policy of the law that the failure of one charged with crime to testify in his own behalf should not create a presumption against him or be regarded as a circumstance indicative of guilt or unduly accentuate the significance of his silence. To permit counsel for a defendant to comment upon or offer explanation of the defendant's failure to testify would open the door for the prosecution and

create a situation the statute was intended to prevent. In *S. v. Humphrey,* 186 N.C. 533 (536), 120 S.E. 85, a new trial was awarded because of the solicitor's adverse comments on defendant's failure to take the stand. In *S. v. Tucker,* 190 N.C. 708, 130 S.E. 720, in an opinion by the present *Chief Justice,* it was said: "In the decisions dealing directly with this statute, it has been held that counsel for the prosecution is precluded from referring in his argument to any failure on the part of a defendant to testify, or to become a witness in his own behalf. *S. v. Harrison,* 145 N.C. 414. It is not a proper subject for comment by counsel in arguing the case before the jury." And in *S. v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733, where exception was noted to the language in which the court in its charge referred to this statute, it was said in an opinion by *Justice Denny,* "The failure of a defendant to go upon the witness stand and testify in his own behalf should not be made the subject of comment, except to inform the jury that a defendant may or may not testify in his own behalf as he may see fit, and his failure to testify 'shall not create any presumption against him.' "

While the mere statement by defendants' counsel that the law says no man has to take the witness stand would seem to be unobjectionable, it is obvious that further comment or explanation might have been violative of the rule established by the decisions of this Court. Furthermore, it was the duty of the presiding judge by prompt action to prevent infringement of this rule and to require obedience to his ruling, though he should be careful that nothing be said or done which would be calculated unduly to prejudice the defendants. *S. v. Howley,* 220 N.C. 113, 16 S.E. 2d 705.

Here, the judge stated from the bench that a defendant had the right to take the witness stand or refrain from doing so, and that the fact he did not testify in his own behalf could not be considered to his prejudice, and added, "It is not proper for attorneys for either side to make comment about it." When counsel thereupon expressed his view that he thought he could comment on the law, the court ruled again that any comment on the subject was improper for attorneys on either side, and that counsel should not "repeat it again." In the charge to the jury the court again stated the rule that defendants' failure to testify should not create any presumption against them. That was all the defendants were entitled to in this regard. Nor do we think the defendants were disadvantaged by the ruling of the court. Verdicts and judgments are not to be lightly set aside, nor for any improper ruling which did not materially and adversely affect the result of the trial. *Collins v. Lamb,* 215 N.C. 719, 2 S.E. 2d 863. An error cannot be regarded as prejudicial unless there is a reasonable probability that the result would have been different. *Call v. Stroud,* 232 N.C. 478, 61 S.E. 2d 342. "Verdicts and judgments

are not to be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to a denial of some substantial right." *Wilson v. Lumber Co.*, 186 N.C. 56, 118 S.E. 797.

Defendants noted exception to the court's instructions to the jury in respect to the definition of the elements necessary to constitute criminal conspiracy, but we think the charge considered contextually is in accord with the decisions of this Court on the subject and free from error. *S. v. Ritter*, 197 N.C. 113, 147 S.E. 733; *S. v. Wrenn*, 198 N.C. 260, 151 S.E. 261; *S. v. Davenport*, 227 N.C. 475 (494), 42 S.E. 2d 686; *S. v. Summerlin*, 232 N.C. 333, 60 S.E. 2d 322. Furthermore, each of the defendants was convicted on all three counts in the bill and the judgment imposed concurrent sentences on each count.

The court's reference to the defendants' defense of alibi seems to have followed approved precedents, and the exception thereto cannot be sustained. *S. v. Bridges, ante,* 577, 64 S.E. 2d 867.

After a long and warmly contested trial the jury has accepted the State's evidence as true and found each of the appealing defendants guilty as charged. A careful examination of the entire record leads to the conclusion that no sufficient ground has been shown for upsetting the result. It will not be disturbed.

No error.