STATE OF NORTH CAROLINA v. FLOYD LINDSEY HUDSON

No. 15

(Filed 12 April 1972)

**1. Kidnapping § 1— definition of the crime**

Kidnapping is the unlawful taking and carrying away of a person by force and against his will; the distance the victim is carried is not material. G.S. 14-39; G.S. 4-1.

**2. Kidnapping § 1— fraud — threats and intimidation**

In the kidnapping of a person the law considers the use of fraud as synonymous with force, and threats and intimidation are equivalent to the actual use of force or violence.

**3. Kidnapping § 1— fraud and intimidation — sufficiency of evidence**

The State's evidence was sufficient to permit the jury to find that defendant was guilty of the crime of kidnapping by practicing both fraud and intimidation to overcome the will of the victim and secure control of her person, where it tended to show that defendant gained entry into the home of the retarded, 15-year-old victim by falsely telling her that he wished to use the telephone, that once inside his acts and words were calculated to frighten and intimidate, that defendant instructed the victim to turn out the porch light, not to scream and to accompany him to his car, that defendant led the victim out the door by the hand telling her he was taking her out for a five-minute drive, and that the victim went with defendant because she was afraid.

**4. Criminal Law § 161— necessity for exceptions**

Any error asserted on appeal must be supported by an exception duly taken and shown in the record; exceptions which appear for the first time in the purported assignments of error present no question for appellate review. Supreme Court Rules 19 and 21.

**5. Criminal Law § 161— assignments of error — requisites**

Each assignment of error must specifically state the alleged error so that the question sought to be presented is therein revealed.

**6. Criminal Law § 163— assignment of error — failure to charge**

An assignment based on the court's failure to charge should set out the defendant's contention as to what the court should have charged.

**7. Criminal Law § 146— appellate rules — indigent appellants**

Appellate rules of practice are applicable to indigent defendants and their court-appointed counsel as they are to all others.

**8. Criminal Law § 146— constitutional question — failure to raise in trial court**

Ordinarily, appellate courts will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court below.

State v. Hudson

9. **Criminal Law § 146— appellate rules — mandatory**

The rules of the Supreme Court are mandatory and will be enforced.

10. **Criminal Law § 161— appeal as exception to judgment**

The appeal itself is considered an exception to the judgment and presents for review any error appearing on the face of the record proper.

11. **Criminal Law §§ 75, 169— erroneous admission of inculpatory statement — harmless error**

Although the admission in this kidnapping prosecution of defendant's inculpatory statement to a police officer was erroneous because there was neither evidence nor findings to show that defendant waived his right to counsel, either in writing as provided by former G.S. 7A-457, or orally as provided by the *Miranda* decision, such error was harmless where (1) defendant's statement was not coerced or involuntary but was voluntarily made, (2) the statement would not be sufficient alone to convict defendant but is simply an admission of facts that, taken with others, tends to show guilt, and (3) defendant's guilt was shown beyond a reasonable doubt by competent, untainted, direct as well as circumstantial evidence.

12. **Criminal Law § 169— admission of incompetent evidence — harmless error**

The admission of evidence which is technically incompetent will be treated as harmless unless it is made to appear that defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded.

APPEAL by defendant from judgment of *Collier, J.*, 15 March 1971 Criminal Session, CABARRUS Superior Court.

The bill of indictment, proper in form, charges defendant with kidnapping Clemmie Hacker on the night of 25 September 1970.

The testimony of Clemmie Hacker, a retarded fifteen-year-old girl, tends to show that on the night of 25 September 1970 she was alone in the house she shared with her mother and sisters in Concord. The defendant appeared at the door at approximately 10 p.m. and asked to use the telephone. Clemmie admitted him, but instead of using the telephone he told her to turn out the porch light, not to scream, and to accompany him to his car. She went with him because she was afraid. He was holding her hand as they went from the house to the car. Defendant then drove to his house trailer where he removed all Clemmie's clothing, struck her in the nose and face breaking a bone and knocking out four teeth, and performed degrading acts

State v. Hudson

with her genitalia. Ultimately he drove her to a point on the bank of the Rocky River where he forced a drink bottle into her vagina, knocked her unconscious and left her naked lying in a field near the Rocky River Bridge.

The testimony of Clemmie Hacker was corroborated by George H. Smith, a police officer to whom she first related the incident. Officer Smith further testified that he informed defendant that the assault and kidnapping of a young white female person was under investigation. "I advised him fully of his constitutional rights. I advised him that he had a right to remain silent, that he did not have to answer any questions that we asked; that he had a right to have an attorney present while he was being questioned; if he could not afford one, one would be appointed for him. Further advised him that he had a right if he chose to talk to us to answer any questions he chose to answer, or any part of any question, or that he may remain silent on anything he wished to remain silent on. After we advised him of his rights he did choose to make a statement to us. We did not offer him any reward. Nor did we offer any influence. Nor did we threaten or employ any duress directly or indirectly to induce him to make a statement. He stated on this night he went to the home of Mrs. Hacker on Bell Avenue, knocked at the door and Clemmie Hacker came to the door and admitted him. He stated that his purpose there was to use the telephone, that he went into the house but did not use the phone, and then after a while he took the girl for a ride in his car, and stated that they went to his trailer-house out on College Circle, and while there he removed the clothing from this girl, but then he didn't remember exactly what took place while there; and they left and drove out to Rocky River Bridge where he left the child under the bridge."

Officer Smith further testified that defendant had the odor of alcohol about him when he was picked up around 3 a.m. on the night in question, but defendant was not under the influence of alcohol. The officer further stated that he found a pair of glasses in defendant's trailer home which Clemmie Hacker identified as belonging to her, and that he found a torn sanitary napkin belt with a part of the napkin attached in a chair in the living room of defendant's home. The officer stated that he went to the spot near Rocky River Bridge where Clemmie Hacker was found and there found a skirt which Miss

Hacker identified as belonging to her and a sweater which the defendant identified as belonging to him.

Deputy Sheriff C. D. Eggers testified that he spotted Clemmie Hacker at approximately 1:30 a.m. on the night of 25 September 1970 lying naked on the sand at the edge of the water beneath the Rocky River Bridge; that her left eye was swollen shut and she had cuts on the side of her face and was bleeding from the mouth; that he called an ambulance.

The trial court on its own motion excused the jury and conducted a voir dire with respect to defendant's inculpatory statement. Officer Smith testified on voir dire for the State. Defendant did not testify and offered no evidence either on voir dire or before the jury. Following the officer's testimony on voir dire the court found as a fact that prior to making any statement defendant was fully warned of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436; that defendant stated that he understood his rights and stated that he would talk to the officers; that his statement to the officers was freely and voluntarily and understandingly made without threats or any promise of reward. Upon such finding the jury was recalled and, without objection, the officer repeated his testimony before the jury substantially as above set out.

The jury convicted defendant of kidnapping as charged and defendant was sentenced to not less than twenty-five years nor more than life imprisonment. From the judgment pronounced defendant appealed to the Supreme Court assigning errors noted in the opinion.

*Clarence E. Horton, Jr. (Davis, Koontz & Horton) Court Appointed Counsel for defendant appellant.*

*Robert Morgan, Attorney General; Robert G. Webb, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

We first consider defendant's contention that the evidence is insufficient to carry the case to the jury on the charge of kidnapping.

[1, 2]   G.S. 14-39 does not define kidnapping and therefore the common-law definition of that crime is the law of this State.

G.S. 4-1. The common-law definition of kidnapping is "the unlawful taking and carrying away of a person by force and against his will." *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870 (1964). The distance the victim is carried is not material. Any carrying away is sufficient. *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971). In the kidnapping of a person the law considers the use of fraud as synonymous with force, *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118 (1962), *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971) ; and threats and intimidation are equivalent to the actual use of force or violence. *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966).

[3] Here, the State's evidence would permit the jury to find that defendant practiced both fraud and intimidation to overcome the will of his victim and secure control of her person. He gained entry to the home on the fraudulent representation that he wished to use the telephone. Once inside, his acts and words were calculated to frighten and intimidate. He instructed his retarded, helpless victim to turn out the porch light, not to scream, and to accompany him to his car. He led her out the door by the hand telling her he was taking her out for a five-minute drive. She testified she went with him because she was afraid. This suffices to show that the journey was undertaken without the victim's consent and against her will. The evidence presents a jury question. This assignment is overruled.

Defendant's remaining assignment of error is based on admission of Officer Smith's testimony in which the officer narrated defendant's inculpatory statements. Defendant contends his incriminating statement should not have been admitted because the record is silent as to defendant's waiver of his right to counsel and even the findings of fact on voir dire are insufficient to show waiver of counsel. The State says, however, that defendant did not object to the admission of this evidence and is attempting to take exception thereto for the first time on appeal.

[4-7] An examination of the record reveals that Officer Smith's testimony concerning the defendant's in-custody statement was received without objection or exception noted. This assignment is therefore ineffectual and presents no question for appellate review. Rules 19(3) and 21, Rules of Practice in the Supreme Court, 254 N.C. 783. "The Rules of Practice (19 and 21) of both this Court and the Court of Appeals require any error

asserted on appeal to be supported by an exception duly taken and shown in the record. Exceptions which appear for the first time in the purported assignments of error present no question for appellate review. *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789. *See State v. Merrick,* 172 N.C. 870, 90 S.E. 257. Furthermore, each assignment must specifically state the alleged error so that the question sought to be presented is therein revealed. *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225. An assignment based on the court's failure to charge should set out the defendant's contention as to what the court should have charged. *State v. Wilson,* 263 N.C. 533, 139 S.E. 2d 736. Appellate rules of practice are applicable to indigent defendants and their court-appointed counsel as they are to all others. *State v. Price,* 265 N.C. 703, 144 S.E. 2d 865." *State v. Jacobs,* 278 N.C. 693, 180 S.E. 2d 832 (1971).

[8] The question of defendant's constitutional right to counsel during in-custody interrogation was not raised in the court below. Ordinarily appellate courts will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court. *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129 (1955) ; *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968) ; *State v. Cumber,* 280 N.C. 127, 185 S.E. 2d 141 (1971). This is in accord with decisions of the Supreme Court of the United States. *Edelman v. California,* 344 U.S. 357, 97 L.Ed. 387, 73 S.Ct. 293 (1952).

[9] The rules of the Supreme Court are mandatory and will be enforced. *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970).

[10] The appeal itself is considered an exception to the judgment and presents for review any error appearing on the face of the record proper. *State v. Ayscue,* 240 N.C. 196, 81 S.E. 2d 403 (1954) ; *State v. Elliott,* 269 N.C. 683, 153 S.E. 2d 330 (1967). Unless error appears on the face of the record proper, the judgment will be sustained. *State v. Williams,* 268 N.C. 295, 150 S.E. 2d 447 (1966) ; *State v. Jackson,* 279 N.C. 503, 183 S.E. 2d 550 (1971). An examination of the record proper reveals no error. *State v. Tinsley,* 279 N.C. 482, 183 S.E. 2d 669 (1971).

[11] Consideration of the assignment on its merits, however, leads to the same result. Admission of defendant's inculpatory statement to Officer Smith was erroneous because there is

neither evidence nor findings to show that defendant waived his right to counsel, either in writing as provided by G.S. 7A-457 on which *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971), is based, or orally as provided by *Miranda,* on which *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971), is based. Even so, the erroneous admission of the statement does not automatically require a new trial. Defendant's statement was not *coerced* as in *Payne v. Arkansas,* 356 U.S. 560, 2 L.Ed. 2d 975, 78 S.Ct. 844 (1958). The statement was not *involuntary,* induced by threat or promise or "by the slightest emotions of hope or fear" as in *State v. Roberts,* 12 N.C. 259 (1827). There is no suggestion that the police applied the stick or waved a carrot to produce the statement. It was voluntarily made. The court so found on voir dire, and all the evidence supports the finding.

The broad sweep of cases dealing with a defendant's inculpatory statements project two predominant concerns: (1) that the circumstances surrounding defendant's interrogation do not render his statement inherently unreliable because involuntary; and (2) that over-zealous officers be deterred from the use of unconstitutional and illegal practices in obtaining a statement from the accused. 3 Wigmore, Evidence § 821 ff. (Chadbourn rev. 1970). Neither of these concerns would be served by remanding this case since, measured by all traditional standards, defendant's statement was entirely voluntary and there is absolutely no evidence of overreaching on the part of the officers. Thus there is no factual basis for an *automatic* new trial.

[12] We have consistently held that the admission of evidence which is technically incompetent will be treated as harmless unless it is made to appear that defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969); *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971); *State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683 (1972). Moreover, every violation of a constitutional right is not prejudicial. "Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. . . . Unless there is a reasonable possibility that the evidence

---

State v. Hudson

---

complained of might have contributed to the conviction, its admission is harmless. *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963)." *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972). "Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the [defendant's statement] on the minds of an average jury." *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969).

Here, the statement made by this defendant placed him at the scene of the crime and in the company of the victim, but it did not prove his guilt. Taken alone, it would not have sufficed to convict defendant of the crime of kidnapping. It is simply an admission of facts that, taken with others, tends to show guilt. 22A C.J.S., Criminal Law § 730 and following; Wigmore, supra, § 821.

Just as in *Harrington, supra,* the case against Hudson "was not woven from circumstantial evidence." Defendant's guilt is shown beyond a reasonable doubt by competent, untainted, direct as well as circumstantial evidence, including: (1) the victim's testimony, (2) the officer's testimony in corroboration, (3) the victim's glasses which were found in defendant's trailer home, (4) a torn sanitary belt and napkin found in a chair in defendant's trailer home, and (5) the victim's skirt and defendant's sweater found at the spot near the Rocky River Bridge where Clemmie Hacker, naked and beaten, was first sighted by Deputy Sheriff Eggers. In light of such overwhelming evidence of guilt, there is no reason to believe that yet another trial would produce a different result. "It is so overwhelming that unless we say that no violation of [Miranda] can constitute harmless error, we must leave this . . . conviction undisturbed." *Harrington v. California, supra.* Admission of the statement was therefore harmless. *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970) ; *State v. Smith,* 278 N.C. 476, 180 S.E. 2d 7 (1971) ; *State v. Fletcher and Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971).

For the reasons stated the verdict and judgment will not be disturbed.

No error.