STATE OF NORTH CAROLINA v. BILLY C. DIX

No. 19

(Filed 26 January 1973)

1. **False Imprisonment § 1; Kidnapping § 1— kidnapping and false imprisonment defined**

    Kidnapping is the unlawful taking and carrying away of a human being against his will by force; false imprisonment is illegal restraint of a person against his will.

2. **Kidnapping § 1— asportation — removal from one part of jail to another**

    There was not a sufficient asportation to constitute the offense of kidnapping where defendant forced a jailer at gunpoint to go from the front door of the jail to the jail cells, a distance of some 62

State v. Dix

feet, compelled the jailer to release three prisoners, and locked the jailer in a cell.

Justice HUSKINS dissenting.

Justice HIGGINS joins in the dissenting opinion.

APPEAL by defendant from the decision of the Court of Appeals (14 N.C. App. 328, 188 S.E. 2d 737), which found no error in his trial before *Exum, Judge,* at the 7 December 1971 Session of ROCKINGHAM.

Defendant was convicted of kidnapping upon an indictment which charged that, on 19 April 1971, he did unlawfully and feloniously "kidnap, seize and detain H. C. Crowder against his will by carrying and forcing the said H. C. Crowder, assistant jailer, from a first floor section of the Rockingham County jail to a lower floor section thereof at the point of a pistol and locking [him] into a barred cell in said jail. . . . " From a sentence of 12-25 years, subject to specified time credits, defendant appealed. The Court of Appeals affirmed, two members of the hearing panel concurring, one dissenting. Defendant appeals to this Court as a matter of right under G.S. 7A-30(2) (1969).

*Attorney General Morgan, Assistant Attorney General Satisky for the State.*

*Gwyn, Gwyn & Morgan for defendant appellant.*

SHARP, Justice.

The determinative question is the sufficiency of the evidence to withstand defendant's motion for nonsuit. The facts material to decision are not controverted.

On 18 April 1970 defendant (aged 23) was incarcerated in the State's prison camp at McLeansville in Guilford County. There, four days earlier, he had begun serving sentences totaling four years which had been imposed by the Superior Court of Rockingham County the preceding week. About noon on 18 April 1970, defendant and three other prisoners escaped.

Before defendant was removed from the Rockingham County jail in Wentworth he had promised his "buddy," Bobby Brown, that he would come back and get him. About 1:30 a.m. on 19 April 1970 defendant knocked on the front door of the Wentworth jail, and H. C. Crowder, the assistant jailer on duty, opened the door. Defendant "threw a gun" in his face,

ordered him to turn around with his hands up, and said, "You got three of my buddies and I will kill you if I don't get them." With a 25-caliber automatic "stuck in [Crowder's] back," defendant marched him from the jail vestibule through the office and into a hall from which two steps gave access to the lower cell blocks. Keeping the gun at the back of Crowder's head, and repeating his threats to kill him, defendant compelled Crowder to open the cell-block door. After Bobby Brown and two other prisoners came out, defendant forced Crowder into the cell. From the front door to the cell defendant had forced Crowder to walk a distance of 62 feet.

Crowder testified that after he entered the cell defendant made about three paces backward and then advanced on him saying, "Damn you, I will kill you"; that he then held the gun up to Crowder's head and snapped it; that the gun did not go off and defendant backed out. After locking the cell block defendant and his three companions fled. Nine minutes later Crowder was released by a trusty, who heard his cries for help.

In brief summary, defendant's testimony tended to show: He broke into the jail with "full intention of committing the crime of aiding and abetting and helping the prisoners to escape," but with no intention of kidnapping Mr. Crowder. He never threatened Crowder in any way. His only purpose in "putting the gun on him" was to scare him, but he told him he was not going to do anything to him but lock him in the cell. He left the keys to the cell block on the desk in the office. In defendant's opinion the distance from the front door to the cell was only 50 feet. He was captured in the State of Virginia about sundown that same day.

Kidnapping, which was a misdemeanor at common law, in this State is one of the most serious of crimes. By statute it is made a felony punishable by imprisonment for a term of years or for life in the discretion of the court. G.S. 14-39 (1969); *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966); *State c. Lowry*, 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed sub. nom.*, 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965); *State v. Kelly*, 206 N.C. 660, 175 S.E. 294 (1934). North Carolina, however, is one of the few states which has not, by statute, redefined kidnapping and its associated common law offense, false imprisonment. *See* Note, 110 U. Pa. L. Rev. 293 (1961). "Thus the common law with respect to kidnapping and false

imprisonment is the law of this State." *State v. Ingland*, 278 N.C. 42, 50, 178 S.E. 2d 577, 582 (1971). *See generally* 2 Burdick, *Law of Crime* §§ 387-389 (1946); Perkins, *Criminal Law* 129-136 (1957).

[1] In our decisions, *kidnapping* is defined generally as the unlawful taking and carrying away of a human being against his will by force, threats, or fraud. *State v. Murphy*, 280 N.C. 1, 184 S.E. 2d 845 (1971); *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971) *cert. denied*, 404 U.S. 1023 (1972); *State v. Ingland, supra; State v. Bruce, supra; State v. Gough*, 257 N.C. 348, 126 S.E. 2d 118 (1962). *False imprisonment* is the illegal restraint of a person against his will. *State v. Lunsford*, 81 N.C. 528 (1879). "Our decisions hold that the unlawful detention of a human being against his will is false imprisonment, not kidnapping." *State v. Ingland, supra* at 51, 178 S.E. 2d at 582. The element of carrying away is the differentiating factor between the two offenses.

Blackstone and some other English authorities defined kidnapping as the "forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another." 4 Blackstone, *Commentaries* *219. Thus, originally, a very substantial asportation was contemplated. It soon became apparent, however, "that distance and isolation could be achieved in the realm, and that even distance was not essential to isolating a victim from the law and his friends, *e.g.*, by 'secret' confinement in the immediate vicinity." Model Penal Code § 212.1, Comment (Tent. Draft No. 11, 1960). In this country it was early held that the transportation to a foreign country was not a necessary part of this offense. 1 Am. Jur. 2d *Abduction and Kidnapping* § 1 (1962).

Bishop's definition of kidnapping, "false imprisonment aggravated by conveying the imprisoned person to some other place," 2 Bishop, *Criminal Law* § 750 (9th ed. 1923), has often been quoted with approval by this Court. *See State v. Ingland, supra* at 51, 178 S.E. 2d at 583; *State v. Lowry, supra* at 540, 139 S.E. 2d at 874; *State v. Gough, supra* at 352, 126 S.E. 2d at 121; *State v. Harrison*, 145 N.C. 408, 417, 59 S.E. 867, 870-71 (1907). Every decision of this Court on the subject recognizes that, in addition to unlawful restraint, the taking, carrying away, transportation, or asportation of the victim from the place where he is seized to some other place is an essential element of common law kidnapping. Aso see *Midgett v. State*,

216 Md. 26, 39-40, 139 A. 2d 209, 216 (1958). An unlawful detention for the purpose of carrying the victim away will not constitute kidnapping until the asportation has in fact been accomplished. *State v. Ingland, supra.*

The specific question presented by this appeal is whether Crowder was "carried away" or "conveyed to some other place" as these terms are used with reference to asportation as an element of kidnapping.

This Court has heretofore decided no case in which a defendant has asported an unlawfully restrained person from one part of the building in which he was seized to another, or from one room to another; nor has it ever attempted "to calculate the requisite asportation in terms of linear measurement" or to delimit the word "place." *See People v. Adams,* 34 Mich. App. 546, 568, 192 N.W. 2d 19, 30 (1971). However, in *State v. Lowry, supra,* there appears a dictum bearing upon these matters, which we have repeated so often that decision in this case requires its examination.

In *State v. Lowry, supra,* defendants forcibly took a husband and wife from their automobile on a public street in Monroe and marched them at gun-point 100 yards to the home of R. Williams, where they were held as hostages for 3-4 hours. In disposing of the defendant's contention that G.S. 14-39 was unconstitutionally vague and overbroad, Justice Clifton L. Moore, writing the opinion for the Court, after stating the common law definition of kidnapping, added the following comment and cited the following authorities to support it:

"It is the fact, not the distance of forcible removal of the victim that constitutes kidnapping. 1 Am. Jur. 2d, *Abduction and Kidnapping,* s. 18, p. 172; *People v. Oganesoff,* 81 Cal. App. 2d 709, 184 P. 2d 953 [(1947)]; *People v. Wein,* 50 Cal. 2d 383, 326 P. 2d 457, cert. den., 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed. 2d 99, reh. den., 358 U.S. 896, 79 S.Ct. 153, 3 L.Ed. 2d 122 [(1958)]." *Id.* at 541, 139 S.E. 2d at 874. The quoted sentence preceding the citations is the *"Chessman-Wein* apothegm," a phrase which was coined by the California Supreme Court in *People v. Daniels,* 71 Cal. 2d 1119, 1129, 80 Cal. Rptr. 897, 903, 459 P. 2d 225, 231 (1969) to designate the rule laid down in *People v. Chessman,* 38 Cal. 2d 166, 192, 238 P. 2d 1001, 1017 (1951) and *People v. Wein, supra* at 399-400, 326 P. 2d at 466. This rule—first laid down by the California court in *Chessman*

and reaffirmed in *Wein*—recites, "It is the fact, not the distance, of forcible removal which constitutes kidnapping in this State."

The *Chessman-Wein* apothegm is part of the first sentence in 1 Am. Jur. 2d, *Abduction and Kidnapping* § 18, at 172 (1962), cited in the preceding quotation from *Lowry*. The entire first sentence of Section 18 reads as follows: "*Under most statutes* it is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping, and there are numerous states under whose legislation interstate transportation of the victims is not necessary." (Emphasis added.) Clearly, the quoted statement has no application to common law kidnapping; nor do the two California cases cited, *Oganesoff* and *Wein*, support the proposition for which they were cited in *Lowry*.

In *Oganesoff*, the asportation was substantial and fulfilled common law requirements. The defendant enticed his victim into his automobile by falsely promising to take her home. Instead he drove her to his house, a considerable distance away. When she attempted to escape he beat and kicked her and forced her into his house at knife point. In some manner she escaped into a cornfield. However, he found her, forcibly returned her to the house, and raped her. The *Chessman-Wein* apothegm thus had no more application to the facts in *Oganesoff* than it did to those of *Lowry*, since the victims in both were transported over a substantial distance from one place to another place, an entirely different environment.

In *Wein*, the court purported to be interpreting a statute. In that case the defendant gained admission to the home of his victim by a ruse, tied her up, forced her to go from room to room until she found her wallet, robbed her and then raped her. The defendant was convicted of kidnapping to commit robbery under Section 209 of the California Penal Code, which permits the imposition of the death penalty against "any person who kidnaps or carries away any individual to commit robbery" if the victim suffers bodily harm. Cal. Penal Code § 209 (West 1970). In pertinent part, Section 207 defines kidnapping as the forcible taking of any person within the State and carrying him "into another country, State or county or into another part of the same county. . . ." Cal. Penal Code § 207 (West 1970).

On appeal, the defendant in *Wein* argued that the legislature never intended asportation between rooms in a dwelling to constitute kidnapping. The California Supreme Court, how-

ever, on authority of *People v. Chessman, supra,* reaffirmed its previous interpretation of the statutes by holding that *any* movement sufficed for a conviction under the challenged sections.

Thus, from the foregoing analysis it appears that the authorities cited in support of the *Lowry* apothegm do not, in fact, support the proposition that *any* asportation will satisfy the common law requirement that a kidnapped victim be conveyed from one place to some other place. It is here noted that 18 years after the *Chessman* decision, when time had demonstrated the unwisdom of the *Chessman-Wein* apothegm, the California Supreme Court confessed error in its previous construction of Sections 207 and 209 of the Penal Code and overruled *Chessman* and *Wein. People v. Daniels, supra* at 1139-40, 80 Cal. Rptr. at 910, 459 P. 2d at 238. *See also People v. Green,* 3 Cal. App. 3d 240, 244, 83 Cal. Rptr. 491, 492 (1969).

The *Lowry* repetition of the *Chessman-Wein* apothegm that "it is the fact, not the distance of the forcible removal of the victim that constitutes kidnapping" has been reiterated in our subsequent cases. *See State v. Hudson,* 281 N.C. 100, 187 S.E. 2d 756 (1972) ; *State v. Murphy, supra; State v. Barbour, supra; State v. Ingland, supra; State v. Penley,* 277 N.C. 704, 178 S.E. 2d 490 (1971).

In *Ingland,* it is said that the early English common law requirement of transportation to another country had been so relaxed that now *"any* carrying away is sufficient. The distance the victim is carried is immaterial. *State v. Lowry, supra." State v. Ingland, supra* at 51, 178 S.E. 2d at 583.

The State's evidence in *Ingland* tended to show : The victim, the defendant and others were members of a group engaged in criminal activities. The defendant, armed with a shotgun and accompanied by three others, one with a knife, ushered the victim (who was suspected of being an informer) from defendant's home and into an automobile. They drove to a wooded area where the victim was "walked" 15-20 yards into the woods and laid face down on the ground, into which stakes were driven so that he could not move without causing his throat to be pierced. He remained under guard in that position for 4½ hours, after which he was released. The defendant's defense was that the victim voluntarily accompanied the group into the woods to talk out a misunderstanding and that he left them there and never returned. He appealed his conviction of kidnapping, and

this Court awarded a new trial because the judge said YES in answer to the jury's question, "Would forcible detention be classified the same as an act of kidnapping?" This was error because, as heretofore pointed out, in this State forcible detention without asportation is false imprisonment, not kidnapping.

In *Barbour*, the victim gave the defendant, a hitchhiker, a ride in his truck. After they had traveled four miles the defendant put a knife to the victim's throat, told him he was an escaped convict and ordered him to drive to a certain place. After driving ten miles with the knife at his throat, the victim suddenly jerked the truck to the left at the entrance to a filling station and in front of an approaching car. The truck door flew open, and the defendant fell out. In our opinion, affirming Barbour's conviction of kidnapping, the *Chessman-Wein* apothegm appears as a portion of a quotation from 51 C.J.S. *Kidnapping* § 1(b)(8), at 502-03 (1967). That quotation had reference to the kidnapping statutes in some states. *Lowry* was cited as being in accord with the quotation.

In *Murphy*, by fraud, defendant lured his victim from a parking lot adjacent to a public street, 150 feet down a path, under a fence, and then 60 feet into the woods. There he tied, tortured and left his victim for dead. His conviction of kidnapping was upheld. In *Hudson*, the defendant frightened a 15-year-old retarded girl into leaving her home, to which he had obtained entrance by fraud. He took her to his house trailer where he abused and permanently injured her. He then drove her to a river bank where he abused her further and left her for dead. In *Penley*, the victim was forced to drive a highjacked prison bus for more than a mile.

In *Ingland, Murphy,* and *Hudson, Lowry* is cited as authority for the statement that, in kidnapping, *"any* carrying away is sufficient. 'The distance the victim is carried is immaterial.'" Taken literally, the *Lowry* statement, as amplified in the later decisions referred to above, would make the test for asportation in kidnapping the same as in larceny. "[A] bare removal from the place where the goods are found by the thief, though he does not make off with them, is a suffcient asportation or carrying away." *State v. Craige,* 89 N.C. 475, 477 (1883). Our research has disclosed no case—and none has been called to our attention—where a common law state in which kidnapping has not been redefined by statute has thus extended the scope of the crime. The asportation in *Lowry, Ingland, Barbour, Murphy,*

*Penley,* and *Hudson* was substantial—not miniscule. It did not relate to such a narrow rule and, in no case decided by this Court, will the facts support it.

As earlier pointed out in the discussion of the California cases cited in *Lowry,* California Penal Code Sections 207 and 209 both made the carrying away of the victim an essential element of the crime of kidnapping. However, in *Chessman* and *Wein* the statutory words of asportation were "drained of their plain meaning." *See* Note, 110 U. Pa. L. Rev. 293, 295 (1961). Since some forcible movement is incidental to the commission of a number of crimes, the inevitable result was that many prosecutions for kidnapping were instituted for the sole purpose of securing a death sentence or life imprisonment for crimes not subject to such severe penalties—and this even though the movement had created no risk to the victim distinct from that inherent in the crime which it accompanied. At the time it considered *Cotton v. Superior Court,* 56 Cal. 2d 459, 15 Cal. Rptr. 65, 364 P. 2d 241 (1961), the California court had become aware of this situation.

In *Cotton, supra,* a group of AFL-CIO pickets invaded a labor camp for the purpose of inducing a strike. In the ensuing melee, persons were pushed to the ground, dragged around, chased and assaulted. A cook was yanked from a toilet, struck on the head, dragged 15 feet, thrown to the ground and kicked. The pickets were indicted for conspiracy, rioting, and kidnapping. The court ordered the kidnapping count dismissed since all asportation appeared "to be only incidental to the assault and rioting." *Id.* at 464, 15 Cal. Rptr. at 68, 364 P. 2d at 244. All laws, the court said, should receive "a sensible construction" and to hold the pickets guilty of kidnapping "could result in a rule which would permit every assault to be prosecuted as a kidnapping . . . [if] the slightest movement was involved." *Id.* at 465, 15 Cal. Rptr. at 68, 364 P. 2d at 244.

Eight years after *Cotton,* in *Daniels* the court specifically repudiated its former construction of Cal. Penal Code § 209 and abrogated the *Chessman-Wein* rule. In *Daniels,* the defendants were, *inter alia,* indicted and convicted under Penal Code § 209 for kidnapping three different women on three separate occasions for the purpose of robbery, the victims suffering bodily harm. Each victim was raped and robbed in her apartment after being forced to walk from one room to another, the distances

varying from 18 to 30 feet. The California Supreme Court reversed defendants' conviction of kidnapping.

Under the *Chessman-Wein* rule, these forced movements of the *Daniels'* victims would clearly have constituted carrying away and supported a conviction of kidnapping—a fact which the court acknowledged. It said, however, that out of the ferment caused by that rule "has arisen a current of common sense in the construction and application of statutes defining the crime of kidnapping." *People v. Daniels, supra* at 1127, 80 Cal. Rptr. at 901, 459 P. 2d at 229. In reaching the conclusion that the forced movements across the room, or from one room to another, could not reasonably be construed to be asportation within the meaning of the statute, the court noted that the movements were merely incidental to the robberies and rapes defendants had intended to commit and that the movements had not substantially increased the risk of harm over and above that necessarily present in those two crimes. Quoting the comment to the kidnapping section of the American Law Institute's Model Penal Code, Model Penal Code § 212.1, Comment (Tent. Draft No. 11, 1960), the court noted the absurdity of prosecuting for kidnapping in cases where the victim of a robbery is forced to open a safe in his own home or to go to the back of the store. Adverting to the rape, robbery, and burglary charges still pending against the defendants Daniels and Simmons, the court said that they might yet be prosecuted "to the fullest extent of the law" for these crimes.

(For cases in which the asportation of a victim for the purpose of robbery was held to go beyond incidental restraint and to constitute kidnapping, *see State v. Soders,* 106 Ariz. 79, 471 P. 2d 275 (1970) ; *People v. Thomas,* 3 Cal. App. 3d 859, 83 Cal. Rptr. 879 (1970).)

In *People v. Fain,* 18 Cal. App. 3d 137, 95 Cal. Rptr. 562 (1971), a case similar to the one we now consider, two armed prisoners forced the deputy sheriff in charge of the county jail to open cell doors and release defendant and three other inmates. The six inmates then proceeded to the first floor. There they forced Deputy Wilson to open the outside door, by which they escaped. Defendant was indicted for escape and for kidnapping Deputy Wilson, whom he had forced to move from the booking area to the door, a distance of "only a few feet." The defendant pled guilty to escape and was convicted of kidnapping. Applying the rule laid down in *Daniels,* the California

State v. Dix

Court of Appeals reversed the conviction of kidnapping. The movement which Officer Wilson was forced to make "was incidental to the escape and did not substantially increase the risk of harm over and above that necessarily present in that offense. . . ." *Id.* at 144, 95 Cal. Rptr. at 565.

The case of *People v. Adams, supra,* also involved the confinement of a prison official within the prison where he worked. During a prison disturbance the defendant and several other armed prisoners seized an inspector whose duties customarily took him through the entire prison. He and three other prison officials were forced to accompany three armed prisoners about 1500 feet to the prison hospital. There they were held 5½ hours during which the prisoners' demands to be allowed to see certain prison officials and a newspaper reporter were met. The prison officials were released unharmed. Thereafter the defendant was indicted for kidnapping under a Michigan statute which, as interpreted by the court, required an asportation when the victim of the alleged kidnapping had not been secretly confined. The Michigan Court of Appeals held that the evidence would not support a conviction of kidnapping. In reaching this decision the court reasoned:

(1) A prison is "an atypical place" for a kidnapping, and movement from one building to another within the prison walls is not significantly different from movement from one room to another in a building.

(2) Neither defendant nor the other felons had any intention of removing the inspector from the prison, and his removal from "4-block," the place of the rioting, to the prison hospital had not exposed him to any increased risk of harm.

(3) "[U]nder the kidnapping statute a movement of the victim does not constitute an asportation unless it has significance independent of the assault. And, unless the victim is removed from the environment where he is found, the consequences of the movement itself to the victim are not independently significant from the assault—the movement does not manifest the commission of a separate crime—and punishment for injury to the victim must be founded upon crimes other than kidnapping." *Id.* at 568, 192 N.W. 2d at 30.

(4) The requisite asportation for kidnapping cannot be calculated in terms of linear measurements; nor can "environment" be defined restrictively. An asportation of 50 feet may

in some cases expose the victim to precisely those abuses which kidnapping statutes are designed to prevent; in other cases, an asportation of 500 feet may alter the victim's situation not at all. "The relevant environment is the totality of the surroundings, animate and inanimate." *Id.*

(5) A caloused concept of kidnapping creates the potential for abusive prosecutions since virtually every false imprisonment, assault, battery, rape, robbery, escape or jail delivery will involve some movement or intentional confinement. When kidnapping, by definition overruns other crimes for which the prescribed punishment is less severe, a prosecutor has the "naked and arbitrary power" to choose the crime for which he will prosecute. *Id.* at 560, 192 N.W. 2d at 26. *See also State v. Johnson,* 67 N.J. Super. 414, 422-23, 170 A. 2d 830, 835 (1961).

Reason No. (5) inveighs heavily against the *Chessman-Wein* rule, for it is generally recognized that, under it, examples of abusive prosecutions have been common. The blame for this, however, "cannot be placed exclusively at the door of the prosecutor for choosing to indict for kidnapping. When an especially outrageous crime is committed there will be a public clamor for the extreme penalty which the law permits, and it is asking too much of public officials and juries to resist such pressures." Model Penal Code § 212.1, Comment (Tent. Draft No. 11, 1960). As the author of the foregoing comment concluded, the maximum penalty for any crime, however outrageous, should be determined by reference to the applicable statute and not by the prosecutor's decision whether to prosecute for the "outrageous crime" or for kidnapping if the penalty is higher and there has been any movement, however slight, in connection with it. *(See* Note, 35 S. Cal. L. Rev. 212 (1962) where it is suggested that such unbounded discretion in the prosecutor might raise an equal protection issue.)

[2] Although *Daniels* and *Adams* involved statutes, the construction of these statutes presented the very problem raised by this appeal, and we find convincing the rationale upon which the California and Michigan courts decided those cases. Here, the movement and confinement to which defendant subjected Crowder is a far cry from common law kidnapping, the basic concept of which never included a mere technical asportation. Crowder was not carried away from the environment in which he was found; he remained inside the jail, which he had in charge. Defendant came to the jail to forcibly take another

prisoner from lawful custody—not to asport Crowder. In effecting the escape defendant "walked" Crowder a distance of not more than 62 feet and locked him in a cell, from which he was released nine minutes later by a trusty who heard his cries for help. The 62-foot asportation was purely incidental to defendant's assault upon the jailer and to the rescue or jail delivery which he accomplished. It had no other significance and created no risks to Crowder which were not inherent in the escape defendant engineered.

Defendant's criminal conduct, of course, created grave risks for himself and all those whom he involved. Upon his own testimony he committed the felony of assault with a firearm upon a law enforcement officer (G.S. 14-34.2 (1969)) and the misdemeanors of false imprisonment and aiding and abetting prisoners to escape from jail. He may also have committed the felony of aiding escaped felons (G.S. 14-259 (1969)). We hold, however, that the evidence will not support his conviction of kidnapping. The Superior Court erred in overruling defendant's motion for nonsuit.

The decision of the Court of Appeals is

Reversed.

Justice HUSKINS dissenting.

My views on kidnapping are fully expressed and documented in *State v. Hudson*, 281 N.C. 100, 187 S.E. 2d 756 (1972); *State v. Murphy*, 280 N.C. 1, 184 S.E. 2d 845 (1971); *State v. Ingland*, 278 N.C. 42, 178 S.E. 2d 577 (1971); and *State v. Penley*, 277 N.C. 704, 178 S.E. 2d 490 (1971). Like views are expressed by Chief Justice Bobbitt in *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971). The foregoing decisions are supported by earlier decisions of this Court, including *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966); *State v. Lowry*, 263 N.C. 536, 139 S.E. 2d 870 (1965); *State v. Gough*, 257 N.C. 348, 126 S.E. 2d 118 (1962); and *State v. Kelly*, 206 N.C. 660, 175 S.E. 2d 294 (1934).

Here, the majority opinion waters down the law which I regard as settled in this State and creates uncertainties of unknown dimensions. The common law definition of kidnapping obtains in North Carolina. It has been defined as "the unlawful taking and carrying away of a person by force and against his

will." *State v. Lowry, supra.* The use of fraud instead of force in effecting kidnapping is still kidnapping, *State v. Gough, supra;* and threats and intimidation are the equivalent of actual force. *State v. Bruce, supra.* It is perfectly apparent that this defendant unlawfully took and carried away the jailer by force and against his will. The majority says defendant "took" the victim but didn't "carry him away enough." How much is enough? The more often that question is answered in future decisions, the more indefinite the definition of kidnapping will become.

I agree that a mere technical asportation of the victim, such as moving him about in the same room, is not kidnapping; but where, as here, by force and against his will, the victim is unlawfully taken and carried away from the free environment in which he was found and locked in a jail cell located elsewhere, the asportation is more than "merely technical" and the "environment" after the abduction is not the environment in which the victim was found. As I see it, the legal principles enunciated in the majority opinion, while sound when applied in a proper factual setting, should not be applied to the facts in this case.

For the reasons stated, I respectfully dissent and vote to affirm the decision of the Court of Appeals.

Justice HIGGINS joins in this dissenting opinion.