STATE OF NORTH CAROLINA v. ARCHIE CHARLES HOSKINS

No. 7926SC41

(Filed 3 July 1979)

**1. Criminal Law § 34.5— evidence of another crime—competency to show identity**

In this prosecution of defendant upon two charges of kidnapping for the purpose of terrorizing the victims, testimony relating to a third incident was admissible to identify defendant as the perpetrator of the crimes charged where the similarity of *modus operandi* between the third incident and the crimes charged tended to show that the same person committed all three offenses in that (1) each incident took place in the same parking lot; (2) each incident occurred late at night; (3) each involved a woman who was alone when accosted; (4) a gun was held on each victim by the perpetrator who threatened to kill the victim if she did not cooperate; and (5) cars belonging to the victims were involved in each incident.

**2. Criminal Law § 75.10— admissibility of confession**

The trial court properly admitted defendant's in-custody statement where the court found upon supporting evidence that defendant made the statement understandingly and voluntarily after he had been fully advised of his constitutional rights and had freely, knowingly and voluntarily waived those rights.

3. **Kidnapping § 1.2— purpose of terrorizing victims—sufficiency of evidence**

   The State's evidence was sufficient to show that defendant kidnapped his victims for the purpose of terrorizing them where it tended to show that defendant repeatedly threatened to kill each of his victims; he forced each of them at gunpoint to travel with him in a car late at night to isolated and dark localities and forced each of them to disrobe; he held a knife to the throat of one victim while she was driving; and both victims testified that they were scared.

4. **Criminal Law § 114.2— instructions—evidence tending to show defendant "confessed"—no expression of opinion**

   In this prosecution upon two charges of kidnapping, the trial court's instruction that there was evidence tending to show that defendant confessed "that he had participated in the crimes in which he was charged" was supported by the evidence and did not constitute an expression of opinion.

5. **Kidnapping § 1.3— failure to instruct on assault and false imprisonment**

   The trial court in a kidnapping case did not err in failing to instruct the jury on assault with a deadly weapon or assault by pointing a gun since those offenses are not lesser included offenses of the crime of kidnapping. Furthermore, even if the common law offense of false imprisonment still exists in this State and is a lesser included offense of the statutory crime of kidnapping, the trial court did not err in failing to instruct the jury on false imprisonment where the State's evidence tended to show the commission of the crime of kidnapping and there was no conflicting evidence relating to any element of that crime.

APPEAL by defendant from *Barbee, Judge*. Judgments entered 16 August 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 5 April 1979.

The defendant was tried upon his pleas of not guilty to two indictments in which he was charged with kidnapping, respectively, Vickie Johnson and Carrie Mae Bennett, persons who had attained the age of 16 years, by unlawfully restraining them and removing them from one place to another for the purpose of terrorizing them.

At trial the State's evidence tended to show: Vickie Denise Johnson, 21 years old, drove to Church's Fried Chicken Restaurant about 12:30 a.m. on 20 May 1978 to purchase chicken. As she was leaving the building, the defendant walked up to her. He held a gun to her side and said, "If you move, I'll kill you." The defendant told her to get in her car. She got in on the passenger side. The defendant drove. As they were pulling out of the parking lot, the defendant held the gun to her head saying he

was going to kill her. The defendant drove down a dark dirt road close to the outskirts of town. He told her to get out of the car and, holding the gun on her, told her that he was going to kill her if she didn't take off her clothes by the time he counted to four. She complied. After she took off her clothes, the defendant told her that he was not going to kill her and gave her the gun. She put her clothes back on and got back in the car. She had the gun with her on the right side of her seat. The defendant then drove the car out of the dirt road and eventually drove into the parking lot of a club. She grabbed the gun and jumped out of the car screaming, "Somebody help me, he is crazy." The defendant grabbed her arm and told her, "Come back. I've got a knife. I'm going to stab you." She jerked away and ran to the front door of the club. The defendant followed behind her. She pulled the gun's trigger three times, but it did not go off. The defendant took the gun from her, ran back to her car, and drove away in it.

At about 2:50 a.m. on the same night, 20 May 1978, Carrie Mae Bennett, 27 years old, drove with her sister to the same Fried Chicken Restaurant. Her sister went in, and as Bennett sat in her car waiting, the defendant jumped in, put a gun to her side, and said to "drive". He told her to drive him to Rock Hill. He said, "Woman, I will kill you if you try any tricks." After they got on Interstate 77, he put a knife to her throat and said, "Do you feel that?" In Rock Hill, the defendant again threatened her life. He told her to stop on a dark road, get out, and take off her blouse and bra. She did so. The defendant then allowed her to put her clothing on again and told her that he wasn't going to kill or rape her, "but [that] he just wanted someone to talk to." At this point she was still not sure the defendant would not kill her. They drove back to Charlotte. The defendant directed her to the place where he stayed and got out of the car about 7:30 a.m. She then drove off.

Three days later, at about 11:05 p.m. on 23 May 1978, in the parking lot of the same Fried Chicken Restaurant, the defendant got into the car in which one Barbara Moore was sitting, drew a hand gun, stuck the gun into Moore's side, and said, "Lady, if you move, I'll shoot you." Moore jumped from the car and ran screaming toward the restaurant. Police Officer Frye observed the incident and chased the defendant, who ran from the car to the rear of the parking lot. He was then chased to a nearby house where

he hid in the crawl space beneath the house until he finally came out and was arrested at 10:45 the next morning, 24 May 1978. The police found a pocket knife and a set of handcuffs in a search of the crawl space and found a hand gun in the field behind the Fried Chicken Restaurant.

Following his arrest, defendant gave a statement to the police in which he admitted his participation in the crimes for which he was charged.

· The defendant did not present evidence. The jury found him guilty as charged in both cases. From judgments imposing prison sentences, the defendant appeals.

*Attorney General Edmisten by Associate Attorney Kaye R. Webb for the State.*

*Tate K. Sterrett for the defendant appellant.*

PARKER, Judge.

[1] The defendant first assigns error to the trial court's overruling his objection to the testimony of Barbara Moore. He contends that this evidence was inadmissible because it showed the commission of a criminal offense separate and distinct from the offenses for which he was being tried. We find no error.

> Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime.

1 Stansbury's N.C. Evidence, Brandis Revision, § 91, p. 289-90.

Here, the evidence of the Barbara Moore incident was relevant to identify the defendant as the perpetrator of the crimes charged. "Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged." *State v. Thompson,* 290 N.C. 431, 438, 226 S.E. 2d 487, 491 (1976) quoting from *State v. McClain,* 240 N.C.

171, 175, 81 S.E. 2d 364, 367 (1954). The similarity of *modus operandi* between the Barbara Moore incident and the crimes charged tended to show that the same person committed all three offenses. These similarities are numerous and compelling: (a) each incident took place in the same parking lot; (b) each incident occurred late at night; (c) each involved a woman who was alone when accosted; (d) a gun was held on each victim by the perpetrator; (e) in each incident the perpetrator threatened to kill the victim if she did not cooperate; and (f) cars belonging to the victims were involved in each incident.

The defendant contends that the evidence was unnecessary to establish identity because defendant's counsel on voir dire offered to stipulate that the defendant "was the man in the car with Carrie Mae Bennett and Vickie Johnson on the evening of the 20th of May." There is, however, no indication in the record that this offer of stipulation was ever made known to the jury. The defendant was on trial upon pleas of not guilty to the offenses charged, and the State had the burden of proving every element of the crimes. Identification of the defendant as the perpetrator of the crimes was an essential part of the State's burden of proof. The evidence of the Barbara Moore incident was relevant to prove identity and was admissible for that purpose. This assignment of error is overruled.

[2]  The defendant next assigns error to the admission into evidence of the statement he made to the police after his arrest. Prior to admitting this statement in evidence, the court conducted a voir dire hearing after which the court entered an order making full findings of fact on the basis of which the court determined that defendant made the statement understandingly and voluntarily after he had been fully advised of his constitutional rights and had freely, knowingly, and voluntarily waived those rights. There was competent evidence to support the trial court's findings. The court's findings of fact, being fully supported by competent evidence, will not be disturbed on appeal. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976). This assignment of error is overruled.

[3]  The defendant assigns error to the trial court's denial of his motion to dismiss, contending that there was insufficient evidence to show that defendant kidnapped his victims for the purpose of

terrorizing them. We disagree. The evidence showed that the defendant repeatedly threatened to kill each of his victims, that he forced each of them at gunpoint to travel with him in a car late at night to isolated and dark localities, that he held a knife to the throat of Carrie Mae Bennett while she was driving, and that he forced both victims to disrobe. Both victims testified that they were scared, and their terror can be readily understood. The evidence was ample to show that the victims were terrorized. The defendant's purpose to terrorize is amply shown by what he did. This assignment of error is overruled.

[4]  The defendant next contends that the trial court erred by expressing an opinion on the evidence in violation of G.S. 15A-1232 during its instructions to the jury. The challenged instructions concern the statement made by defendant to the police. The trial court said:

> There is evidence which tends to show that the defendant confessed that he participated in the crimes charged in this case.

*     *     *

> The State's evidence . . . tends to show that . . . the defendant made a statement to Detective M. V. Holt of the Charlotte Police Department, admitting that he had participated in the crimes in which he was charged.

The defendant's statement reads as follows:

> . . . Saturday night sometime after 12 midnight I was at Church's Chicken on W. Trade Street. I saw a girl named "Little Mama" pull on to the lot in a Gran Prix. She walked on in to Church's. She bought some chicken and came back out toward her car. I met her at her car and pulled my gun and told her to move over and "Don't touch the latch on the door. I drove the car away down Trade Street to I-77 to West Boulevard and headed toward the airport. I pulled off West Boulevard near Little Rock Apartments on a dead end street and told her to take all her clothes off. I got out of the car. She took all her clothes off and walked around the car to where I was standing. I told her to put her clothes back on her stinking ass and she did. We got back in the car and

drove to the Pilot Service Station on West Boulevard near Old Steele Creek to call her mother. After that we went to the CAS-BAR lounge where she grabbed my gun and jumped out of the car screaming "somebody help me, he is crazy". She started to run into the Lounge and I grabbed her arm and got the gun back. I then jumped in the car and left. I drove the car back to Sumter Street near my Mothers house and parked it. I went to my Mother's house and stayed a few minutes and talked to my old lady, then I left again.

I then walked back up to Church's Chicken again. I seen a green Pinto parked on the lot next to the yellow house with a girl in it. I got in the car and pulled my gun out of my pocket and laid it down and told her to start driving down I-77 and we drove down to Rock Hill, S. C. We got lost and asked some policeman for directions and they told us. We rode around and then came to Charlotte and I got out of the car on W. Boulevard in front of Little Rock Apartments. I went to Eular Bells' apartment at 3031 Faye # 9 and went to bed, about 8:00.

In this statement, the defendant, did in fact admit or confess "that he had participated in the crimes in which he was charged," precisely as the trial court instructed. This case is distinguishable from *State v. Bray*, 37 N.C. App. 43, 245 S.E. 2d 190 (1978), upon which defendant relies. In *Bray*, the trial court's characterization of defendant's statement as a *confession* to the crime charged was a misstatement of the facts clearly resulting in prejudice to the defendant. Although the defendant in *Bray*, charged with second degree murder, had admitted to the investigating officer that he had fired the fatal shot, he had not *confessed* to *murdering or otherwise unlawfully taking the life of the decedent*, but contended throughout that he had acted lawfully. In the present case, the trial court did not misstate the facts in the challenged instructions. This assignment of error is overruled.

[5] The defendant assigns error to the trial court's refusal to instruct the jury that it might find the defendant guilty of assault with a deadly weapon, assault by pointing a gun, and false imprisonment. This assignment of error has no merit. Assault with a deadly weapon and assault by pointing a gun are not lesser included offenses of the crime of kidnapping, which was the offense

with which defendant was charged; since he was not charged with assault with a deadly weapon, or with assault by pointing a gun, and since neither of these is included within the offense with which he was charged, it would have been error for the court to have instructed the jury on them. Nor was the trial court required to instruct the jury on the offense of false imprisonment. The common law crime of false imprisonment was a distinct crime from the common law crime of kidnapping. *State v. Dix*, 282 N.C. 490, 193 S.E. 2d 897 (1973). Under our present statute relating to kidnapping, G.S. 14-39, the statutory offense may be committed when a person "shall unlawfully confine, restrain, or remove from one place to another, any other person . . . if such confinement, restraint, or removal is for" one of the unlawful purposes enumerated in the statute. On this appeal we need not decide whether the common law offense of false imprisonment still exists in this State as a separate offense nor whether, if so, it may properly be considered as a lesser offense included within the statutory offense proscribed by present G.S. 14-39. This is so because, even if the common law crime of false imprisonment be considered as still existing in this State and as being a lesser offense included within the offense charged by the indictments in this case, the necessity for instructing the jury as to an included crime of lesser degree than that charged arises only when there is evidence from which the jury could find that such included crime of lesser degree was committed. There is no such necessity if the State's evidence tends to show the commission of the crime charged and there is no conflicting evidence relating to elements of the crime charged. *See, State v. Keenan*, 289 Minn. 313, 184 N.W. 2d 410 (1971). "Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice." *State v. Hicks*, 241 N.C. 156, 160, 84 S.E. 2d 545, 547 (1954). Here, the State's evidence all tends to show the commission by the defendant of the crime charged and there was no conflicting evidence relating to any element of that crime. This assignment of error is overruled.

We have considered all of defendant's remaining assignments of error and find them without merit. The defendant in this case received a fair trial free from reversible error.

No error.

Judges HEDRICK and CARLTON concur.