WIDENER, Circuit Judge,
concurring and dissenting:
I concur in parts III and IV of the majority opinion, but to the rest of the opinion, I must respectfully dissent.
I.
The majority bases its decision on the limiting of the decision in Jenkins v. Med-ford, 119 F.3d 1156, 1165 (4th Cir.1997) (en banc), to sworn law enforcement deputies for the purpose of determining whether those deputies might have been fired for political reasons under Elrod v. Bums, 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and on its finding that Mrs. Knight’s activities as a detention officer in North Carolina were primarily ministerial. I believe the district court properly deter *554 mined that Mrs. Knight’s duties as a detention officer did not differ sufficiently to distinguish her stature from that of the deputy sheriffs at issue in Jenkins. I do not agree with the majority’s technical distinctions between the .position of detention officer and deputy sheriff; indeed, on the facts of this case there are none of consequence.
In Jenkins, we found several characteristics important in our determination that deputy sheriffs are policymakers. We noted that deputy sheriffs are the alter egos of the sheriff; therefore, the sheriff is liable for the deputy’s actions. Jenkins, 119 F.3d at 1164. We also found that deputy sheriffs exercised discretion in determining how to complete their law enforcement duties. Jenkins, 119 F.Sd at 1165. Deputy sheriffs foster public confidence in law enforcement and make decisions that create policy. Jenkins, 119 F.3d at 1162. In sum, we acknowledged that persons hired as policymakers and persons privy to private information can be fired for political reasons. Jenkins, 119 F.3d at 1164.
In North Carolina, one of the sheriffs principal statutory duties is the care and custody of the jail. N.C. GemStat. § 162-■22. The North Carolina Administrative Code defines a detention officer as a “person performing responsibilities ... which include but are not limited to the control, care, and supervision of any inmates incarcerated in the county jail ... under the direct supervision and management of the sheriff.” N.C. Admin. Code tit. 12, r. 10B.0103. Under North Carolina law, detention officers are the alter egos of the sheriff; therefore, the sheriff is liable for the detention officers’ actions. See Sutton v. Williams, 199 N.C. 546, 155 S.E. 160 (1930); Davis v. Moore, 215 N.C. 449, 2 S.E.2d 366 (1939); Dunn v. Swanson, 217 N.C. 279, 7 S.E.2d 563 (1940). Detention officers are engaged in law enforcement activities concerning the supervision of inmates. See N.C. Gen.Stat. § 153A. North Carolina law also considers both deputy sheriffs and detention officers to be justice officers. N.C. GemStat. § 17E-2(3)(a) & (b).
The detention officer manages inmates and those who visit them. Through this contact, she communicates the sheriff’s policy regarding inmates and prison management, not unlike the way deputy sheriffs communicate the sheriffs law enforcement policy with the members of the public they deal with in doing their duty. Even if some detention officers do not have the power to arrest in public like sworn deputies, Gowens v. Alamance County, 216 N.C. 107, 3 S.E.2d 339, 341 (1939), detention officers are vested with a certain amount of discretion in that they must be able to address custody, care, medical, and other decisions respecting the inmates in their custody. See N.C. GemStat § 153A-224. A detention officer may not necessarily be a confidant of the sheriff himself, but she may be privy to confidential information, and the detention officer does implement the sheriffs policy with respect to the jail and to inmate treatment.
I agree with the district court that these duties, which the district court recounted in greater detail, essentially comport with those we found important in Jenkins. A detention officer performs more than mere ministerial functions, and I believe that any differences between the positions of deputy and detention officer are distinctions without difference.
II.
A.
It is easily demonstrated that Mrs. Knight was the alter ego of Vernon, the sheriff.
A North Carolina statute provides:
The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof....
N.C. GemStat. § 162-22. Another North Carolina statute provides:
The sheriff may not delegate to another person the final responsibility for discharging his official duties, but he may appoint a deputy or employ others to assist him in performing his official duties, (italics added)
N.C. GemStat. § 162-24.
*555 Mrs. Knight was a Justice Officer under North Carolina law. A Justice Officer is:
a person who, through the special trust and confidence of the sheriff, has been appointed as a detention officer by the sheriff, (italics added)
N.C. Gen.Stat. § 17E-2(3)(6).
Thus, Mrs. Knight was a Justice Officer in whom the sheriff imposed “special trust and confidence” and for whom the sheriff was liable under North Carolina statutory law without even the necessity of referring to court decisions, but which court decisions are consistent with this conclusion.
B.
The North Carolina Supreme Court has reasoned that a jailer is a “law enforcement officer.” State v. Dix, 282 N.C. 490, 193 S.E.2d 897, 904 (1973). And the district court has found without refutation that a Jailer II is a sworn law enforcement officer.
It is admitted by Mrs. Knight that she was promoted from Jailer I to Jailer II. See Br. p.2, A.30, A.393. And, as noted, the district court found without refutation that a Jailer II is a sworn law enforcement officer. A.393. That fact is corroborated by the position Mrs. Knight takes in her brief, and the majority takes in this opinion, that she supports her case as to liability by her claim that she was not sworn and had not taken the proper training. Mrs. Knight, however, undoubtedly accepted the greater pay and emoluments of the office, and it is more than unbecoming, even impermissible, for her to accept the pay of the office but not the disabilities attending it. Official acts are presumed to have been done in a regular manner, see e.g. Nofire v. United States, 164 U.S. 667, 660-61, 17 S.Ct. 212, 41 L.Ed. 588 (1897), and I find her statement that she was not qualified for, or sworn to, the office she held and the salary she received to border on the inherently incredible. Certainly it is not enough to upset a summary judgment or to accept as a fact.[1]
Indeed, even a casual reference to the statutes of North Carolina shows that N.C. Gen.Stat. § 11-11 sets out the oaths, 29 in all, for every officer of North Carolina which “shall be in the words following the names[2] of said persons respectively.” Among them are the oaths to be administered, for Sheriff, to the “office of sheriff of_ county,” and the separate oath of a “Law Enforcement Officer.” The only other of those 29 oaths which could apply to Mrs. Knight is the one styled “General Oath” which is given when “the term[3] of whose oath is not given above” in the 28 previous oaths.
Because the Supreme Court of North Carolina has reasoned that a jailer is a law enforcement officer, and because that is the only oath among the 29 which is applicable to her, Mrs. Knight is bound to have been required to take the oath of a “Law Enforcement Officer” under N.C. Gen. Stat. § 11-11. That is the same oath taken by a deputy sheriff, and it obligates her to “be alert and vigilant to enforce the criminal laws of this State.”
I am of opinion that this case should be disposed of on the reasoning of Regan v. Boogertman, 984 F.2d 577, 580 (2d Cir. 1993):
There is no likely circumstance in which a shared ideology is more important than when an elected official appoints a deputy who may act in his or her stead. Elected officials are charged with carrying forth the mandate of the voting pub-, lie, and in order to effectuate the policies promised the electorate, that official must be able to have trusted advisors and alternates who are directly accountable to that official.
*556 To reach the conclusion of the majority-under North Carolina law, it would be necessary to find that Mrs. Knight was not a law enforcement officer, which is patently not possible.
III.
Whatever factual differences I may have with the majority, or whatever different conclusion I may draw from the same facts, should not cloud or obscure the fact that under three North Carolina statutes and a decision of the North Carolina Supreme Court, Mrs. Knight was not the type of employee entitled to Constitutional protection because of her political affiliation and loyalties. N.C. Gen.Stat. § 162-22 provides that:
The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof....
N.C. Gen.Stat. § 162-24 provides that:
The sheriff may not delegate to an other person the final responsibility for discharging his official duties, but he may appoint a deputy or employ others to assist him in performing his official duties.
N.C. Gen.Stat. § 17E-2(3)(b) provides that a justice officer is:
A person who, through the special trust and confidence of the sheriff, has been appointed as a detention officer by the sheriff....
Mrs. Knight was a justice officer.
The North Carolina Supreme Court has decided that a jailer is a “law enforcement officer” in State v. Dix, 282 N.C. 490, 193 S.E.2d 897, 904 (1973).
Even on the facts of this case, acknowledged by the majority, these statutes and the Dix decision alone justify the conclusion of the district court.
In sum, I would affirm.

.In his deposition. Sheriff Vernon testified that Mrs. Knight was not a sworn law enforcement officer. However, it appears that this testimony was based on his mistaken belief that Mrs. Knight was employed as a Jailer I and not employed as a Jailer II in 1994. Mrs. Knight’s employment evaluations reveal that she held the position of a Jailer II since at least 1992.

. “Names” refers to the name of the office.

. "Term” refers to the name of the office.